McGREGOR W. SCOTT
United States Attorney
STEPHANIE HAMILTON BORCHERS
Assistant United States Attorney
United States Courthouse
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4080
Facsimile: (559) 497-4099

Attorneys for Plaintiff, UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. |
| Plaintiff, | **COMPLAINT FOR PERMANENT INJUNCTION** |
| v. | |
| ORGANIC PASTURES DAIRY COMPANY LLC, corporation and MARK McAFEE, individual. | |
| Defendants. | |

INTRODUCTION

Plaintiff, the United States of America, by its undersigned attorneys, respectfully represents to this Court as follows:

1. This statutory injunction proceeding is brought under the Public Health Service Act (the "PHSA"), 42 U.S.C. §§ 264 and 271, and the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. § 332(a), to enjoin and restrain Organic Pastures Dairy

1

_____
COMPLAINT FOR PERMANENT INJUNCTION

1  Company LLC, a corporation, and Mark McAfee, an individual
2  (hereafter collectively, "Defendants"), from violating:
3      A.   42 U.S.C. § 264, by engaging in conduct that may
4  endanger the public health and safety by contributing to the
5  introduction, transmission, or spread of communicable diseases
6  between the states or into the United States.  Specifically,
7  Defendants violate 21 C.F.R. § 1240.61(a), which prohibits the
8  distribution in interstate commerce of raw (unpasteurized) milk
9  and raw (unpasteurized) milk products in final package form for
10 human consumption;
11     B.   21 U.S.C. § 331(a), by introducing or delivering,
12 and causing to be introduced or delivered, into interstate
13 commerce food that is misbranded within the meaning of 21 U.S.C.
14 § 343(a)(1); and
15     C.   21 U.S.C. § 331(d), by introducing or delivering,
16 and causing to be introduced or delivered, into interstate
17 commerce new drugs within the meaning of 21 U.S.C. § 321(p) that
18 are neither approved under 21 U.S.C. § 355(a), nor exempt from
19 approval pursuant to 21 U.S.C. § 355(i).
20   2.   For the purposes of this Complaint, the terms "raw" and
21 "unpasteurized" have the same meaning and are used
22 interchangeably.
23                    JURISDICTION AND VENUE
24   3.   This Court has jurisdiction pursuant to 21 U.S.C.
25 § 332(a) and 28 U.S.C. §§ 1331 and 1345.  This Court also has
26 jurisdiction under the PHSA, as well as its general equity power
27 to enjoin conduct that endangers the public health and safety,
28 such as conduct that violates the PHSA, 42 U.S.C. § 264, and the

implementing regulation thereunder, 21 C.F.R. § 1240.61(a).

4.  Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c).

## DEFENDANTS

5.  Defendant Organic Pastures Dairy Company LLC ("Organic Pastures") is incorporated under the laws of the state of California, with its principal place of business located at 7221 South Jameson, Fresno, California.

6.  Defendant Mark McAfee, an individual, is the co-founder and managing member of Organic Pastures.  Mr. McAfee is the most responsible individual for the day-to-day operations of Organic Pastures.  Specifically, he is responsible for, and has authority over, all of Organic Pastures' manufacturing and distribution operations.  Mr. McAfee resides and conducts business in California, within the jurisdiction of this Court.

7.  Defendants have been, and are now, engaged in milking cows and packaging, labeling, selling, and distributing in interstate commerce raw milk and raw milk products including, but not limited to, cream, butter, buttermilk and colostrum.

## HEALTH RISKS ASSOCIATED WITH RAW MILK

8.  Raw milk and raw milk products contain a wide variety of harmful bacteria including, but not limited to, listeria monocytogenes, e. coli, salmonella, campylobacter, and brucella, all of which may cause illness and possibly death.

9.  The United States Food and Drug Administration ("FDA") and other federal and state health agencies have documented a long history of the risks to human health associated with the consumption of raw milk and raw milk products.  Clinical and

1 epidemiological studies by FDA, state health agencies, and others
2 have established a direct causal link between the consumption of
3 raw milk and gastrointestinal disease.  <u>See</u> <u>also</u> <u>Public Citizen</u>
4 <u>v. Heckler</u>, 653 F. Supp. 1229, 1241 (D.D.C. 1986) ("[i]t is
5 undisputed that all types of raw milk are unsafe for human
6 consumption and pose a significant health risk.").
7     10.  Between 2000 and 2005, there were nineteen events of
8 illness associated with raw milk and raw milk products that
9 involved 473 persons, many of them children and pregnant women.
10 These events resulted in seven deaths, including three infant
11 mortalities.
12     11.  FDA, the Centers for Disease Control, the National
13 Association of State Departments of Agriculture, and others have
14 expressly advised consumers about the dangers of drinking raw
15 milk.

LEGAL STANDARDS

17     12.  The PHSA, 42 U.S.C. § 264(a), authorizes the Secretary
18 of the Department of Health and Human Services to make and
19 enforce regulations to prevent the introduction, transmission, or
20 spread of communicable diseases from one state to another.
21     13.  Section 368(a) of the PHSA, 42 U.S.C. § 271(a), makes
22 any violation of a regulation issued under 42 U.S.C. § 264 a
23 crime.
24     14.  Pursuant to the PHSA, FDA has promulgated the following
25 ban against the interstate sale of raw milk and raw milk
26 products:  "No person shall cause to be delivered into interstate
27 commerce or shall sell [or] otherwise distribute . . . any milk
28 or milk product in final package form for direct human

1  consumption unless the product has been pasteurized or is made
2  from dairy ingredients (milk and milk products) that have all
3  been pasteurized . . ."  21 C.F.R. § 1240.61(a).

4      15.  "Milk product" is defined as food "made exclusively or
5  principally from the lacteal secretion obtained from one or more
6  healthy milk-producing animals . . . " 21 C.F.R. § 1240.3(j).

7      16.  The introduction and delivery for introduction into
8  interstate commerce of misbranded foods violates section 331(a)
9  of the Act.  21 U.S.C. § 331(a).

10     17.  A food is deemed misbranded under the Act if its label
11 is false or misleading in any particular.  21 U.S.C. § 343(a)(1).

12     18.  Any product is a drug if it is "intended for use in the
13 diagnosis, cure, mitigation, treatment, or prevention of
14 disease."  21 U.S.C. § 321(g)(1)(B).

15     19.  The intended use of a product may be determined from
16 any relevant source.  See 21 C.F.R. § 201.128.

17     20.  The Act defines labeling as "all labels and other
18 written, printed, or graphic matter (1) upon any article or any
19 of its containers or wrappers, or (2) accompanying such article."
20 21 U.S.C. § 321(m).  The term "accompanying" in the second clause
21 of § 321(m) is not restricted to labeling that is on or in the
22 article at issue and that physical attachment is not necessary;
23 rather, an article "accompanies" another when one supplements or
24 explains the other such as a committee report of the Congress
25 "accompanies" a bill.

26     21.  Under the Act, a new drug is any drug "the composition
27 of which is such that such drug is not generally recognized,
28 among experts qualified by scientific training and experience to

_____
COMPLAINT FOR PERMANENT INJUNCTION

1 evaluate the safety and effectiveness of drugs, as safe and
2 effective for use under the conditions prescribed, recommended,
3 or suggested in the labeling thereof . . . "  21 U.S.C.
4 § 321(p)(1).

5   22.  A new drug may not be introduced or delivered for
6 introduction into interstate commerce unless FDA has approved a
7 new drug application or an abbreviated new drug application with
8 respect to the drug, or it qualifies for an exemption as an
9 investigational new drug.  21 U.S.C. § 355.

10   23.  The introduction and delivery for introduction into
11 interstate commerce of an unapproved new drug violates section
12 331(d) of the Act.  21 U.S.C. § 331(d).

FDA INSPECTIONS/EVIDENCE

2007 EVIDENCE REGARDING DEFENDANTS' SALE OF RAW MILK

  24.  In September 2007, Organic Pastures distributed numerous frozen samples of raw milk and raw milk products in interstate commerce.  The labeling located on the **exterior** of the shipping container read as follows:

> "In compliance with FDA regulations and CFR 1240.61, [Organic Pastures] does not take orders or ship any raw dairy products for 'human consumption' outside of the State of California.  All out of state product sales are labeled and intended for: <u>'Pet Food' consumption only</u>.  The quality and safety of this 'pet food' product is identical to what is offered to consumers in the California retail market."
>
> (hereafter, referred to as "Defendants' 'pet food' labeling").

Nowhere on the individual retail product is there a label indicating that the product is to be limited to pet consumption or identifying the product as pet food.  The labels on the individual retail products bear statements such as "the best milk

you'll ever taste," and state that Organic Pastures products "are highly recommended by . . . thousands of happy healthy people."

25. The labels on the individual retail products distributed by Organic Pastures in September 2007 also contain the following statement:

> "Raw (unpasteurized) milk and raw milk dairy products may contain disease-causing micro-organisms.  Persons at highest risk of disease from these organisms include newborns and infants; the elderly; pregnant women; those taking corticosteriods, antibiotics or antacids; and those having chronic illnesses or other conditions that weaken their immunity."

This statement (hereafter, referred to as "Defendants' Statement") indicates that Defendants' raw milk and raw milk products are intended for human consumption.

26. During FDA's September 2007 inspection of Organic Pastures, Defendant McAfee confirmed that, with respect to Defendants' raw cream, stickers stating "Cat or Dog Food Only" or "Pet Food consumption only" are placed only on the exterior of shipping containers for products shipped out of state and not on the individual retail products.

27. In September 2007, an FDA investigator received an unsolicited email from Organic Pastures regarding raw milk that read, in part:  "Dear raw milk customer; Absolutely! Raw milk can be shipped via UPS to all US states *** We would love you to try raw milk today! *** Raw milk is known for its ability to re-build your immune system *** Remember to tell everyone who has asthma that they will be cured by raw milk ***."  Nowhere in this email does it state that raw milk is intended to be used as pet food.

28. In June 2007, Defendant McAfee sent an email to an FDA public affairs specialist in which he objected to an FDA

presentation regarding the health risks associated with raw milk. In the email, he states that "when raw milk is tested and labeled as intended for direct human consumption it is extremely safe," and makes numerous statements reflecting his intention that raw milk be consumed by humans.

29.  On March 17, 2008, FDA investigators confirmed that Defendants' website (www.organicpastures.com) (hereafter, "Defendants' website") provides the following statement to explain the 'pet food' labeling on some of its products:

> "FDA law CFR 1240.61 states that it is illegal for anyone to transport raw dairy products across state lines 'in final package form for direct human consumption unless that product has been pasteurized.' In compliance with CFR 1240.61, [Organic Pastures] labels and ships its products outside of California for 'pet consumption only.'"

Defendants have included a similar statement on their website's ordering page.

## DEFENDANTS' DRUG CLAIMS

30.  On March 17 and 25, 2008, FDA investigators confirmed that Defendants' website contains numerous claims that their raw milk and raw milk products can cure, mitigate, treat, or prevent various diseases including, but not limited to, cataracts, ear infections, sinus infections, arthritis pain, allergy, and asthma.

31.  That same month, FDA investigators confirmed that Defendants' website contains numerous hyperlinks ("hotlinks") to other websites.  Defendants direct customers to these other websites as follows:

> "[Organic Pastures] may not make a medical claim or post cures for any disease process relative to any [Organic Pastures] product.  That is a crime under current FDA law. We can recommend that you visit www.realmilk.com, www.westonaprice.org, or www.mercola.com, and other websites

8

_____
COMPLAINT FOR PERMANENT INJUNCTION

        that will list literally 50 different illnesses that are directly, naturally, and positively affected by consuming raw milk. Please see the testimonial past of this website for a list of links, testimonial stories of healing and recovery. They are dramatic and compelling."

32. With respect to at least one of the other websites referred to above, www.localforage.com, customers can automatically be directed from Defendants' website to a website that contains numerous claims that raw milk and raw milk products can cure, mitigate, treat, or prevent various diseases including, but not limited to, asthma, eczema, psoriasis, constipation, Crohn's disease, arthritis, and hypertension. Defendants' products are specifically referred to throughout the www.localforage.com website.

33. As stated in paragraph 27 above, Defendants sent an unsolicited email to an FDA investigator in September 2007, in which Defendants claim that their raw milk cures asthma.

34. Defendants distribute promotional materials that contain claims that their raw milk and raw milk products can cure, mitigate, treat, or prevent various diseases. Specifically, Defendants' brochure titled "Organic Pastures Raw Dairy Products" contains various claims that Defendants' products can cure allergies and asthma.

<u>PRIOR EVIDENCE</u>

35. FDA's April 2004 inspection revealed that Defendants distributed raw milk and raw milk products in interstate commerce for human consumption.

36. Between March and November 2004, FDA collected thirteen raw milk and raw milk product samples from Organic Pastures after shipment in interstate commerce. None of the products (either on

_____
COMPLAINT FOR PERMANENT INJUNCTION

the shipping cartons or the individual products) contained any statement that they were not for human consumption.

37. On March 8, 2005, an FDA investigator confirmed that Defendants' website contained the following statement in response to a question about the 'pet food' labeling on products sold outside of California:

> "FDA law CFR 1240.61 states that it is illegal for anyone to transport raw dairy products across state lines 'in final package form for direct human consumption unless that product has been pasteurized.' [Organic Pastures] has <u>creatively</u> labeled its products for sale outside of California in such a way that it is not illegal under the law . . . This provides <u>raw food drinkers</u> the freedom to choose a raw product over a dead product. It is also great pet food." (emphasis added).

38. According to Defendants' "breaking news" page on its website, reviewed by an FDA investigator in July 2005, "There are absolutely no safety or quality differences between the Oregon products and the [Organic Pastures] products sold throughout California. There are also no requirements to include a statement which says, 'not for human consumption.'"

39. In July 2005, an undercover FDA investigator ordered numerous raw milk and raw milk products directly from Organic Pastures by telephone. An Organic Pastures sales representative completed this order after the FDA investigator informed her that the milk was intended for herself and her family. When asked about the 'pet food' labeling, the sales representative stated that the product was safe for humans and that this statement was a legal loophole for the firm to be able to ship the product out of state. These products, which were transported to the state of Washington, were shipped in a container to which Defendants' 'pet food' labeling was affixed. Like the samples collected in

1  September 2007, the individual retail products contained
2  Defendants' Statement regarding human consumption and were not
3  labeled for pet food use.

4      40.  Also in July 2005, FDA collected samples of Defendants'
5  raw milk and raw milk products from a retail market in Oregon.
6  The labels of the individual retail products were identical to
7  the labels on the products ordered by FDA directly from Organic
8  Pastures that same month with the exception that a sticker was
9  affixed to the individual labels that read, "Cat or Dog Food Only
10 Outside of California."

11     41.  Mark McAfee is quoted in the July 8, 2005, issue of the
12 Portland Tribune as follows: "The neat thing about the law is
13 that it can be interpreted in many ways.  The state of Oregon
14 understood that there was a loophole by putting a pet sticker on
15 the product. And there is no regulation that you can't eat pet
16 food either.  I am a revolutionist in this, and I won't overlook
17 any loophole that will get the milk out there."

18     42.  Defendants also distributed numerous samples of raw
19 milk and raw milk products in interstate commerce in February
20 2006.  Like the products distributed in September 2007, these
21 products were shipped in containers that contained Defendants'
22 'pet food' labeling.  The individual retail products were not
23 labeled as limited to pet food use.  The individual retail
24 products contained the "best milk you'll ever taste" statement,
25 the recommendation of "thousands of happy healthy people," and
26 Defendants' Statement regarding human consumption.

## RECALLS

28     43.  Over the past two years, Organic Pastures has issued

three recalls associated with pathogenic bacteria in its raw milk and/or raw milk products.  On September 21, 2006, the California Department of Food and Agriculture ("CDFA") ordered Organic Pastures to recall all of its products (except aged cheese) from the retail market and placed a quarantine hold on Defendants' raw milk production after the state epidemiologically linked the firm's raw milk and raw milk products to four cases of e.coli bacterial illness. The state lifted the quarantine hold the following week.

44.   In September 2007, CDFA ordered Organic Pastures to withdraw certain lots of its raw cream from the retail market due to detection of Listeria monocytogenes bacteria.

45.   On September 11, 2008, CDFA ordered Organic Pastures to recall one lot of its raw cream from the retail market and placed a quarantine hold on the product due to detection of campylobacter bacteria.

### DEFENDANTS' VIOLATIONS

46.   Defendants sell raw milk and raw milk products. Defendants promote their products as "unpasteurized" or "raw," and FDA's independent analysis has confirmed that Defendants' products are raw.

47.   Defendants distribute raw milk and raw milk products in interstate commerce.  FDA has solicited numerous interstate sales of Defendants' raw milk and raw milk products.  Defendants' September 5, 2007, unsolicited email sent to the agency and Defendants' website specifically state that they ship to all states.

48.   Defendants sell raw milk and raw milk products in

1  "final package form."  Defendants' products are sold directly to
2  consumers rather than to dairy processing plants for
3  pasteurization.  Consumers are not required to take any
4  additional steps (other than thawing) in order to consume
5  Defendants' products.  Defendants' website contains directions
6  for consumers to thaw their products and states that freezing
7  "has little effect on the important health benefits that raw
8  dairy products provide."
9       49.  Defendants sell raw milk and raw milk products for
10 "direct human consumption."  Despite the inclusion of Defendants'
11 'pet food' labeling on products sold outside of California, the
12 evidence establishes that Defendants intend their products to be
13 consumed by humans.
14      50.  Accordingly, Defendants' sale and distribution into
15 interstate commerce of raw milk and raw milk products in final
16 package form for human consumption violates the PHSA, 42 U.S.C.
17 § 264(a), and the implementing regulation codified at 21 C.F.R.
18 § 1240.61(a).
19      51.  Defendants' milk and milk products are food, as defined
20 by the Act, 21 U.S.C. § 321(f), which is sold in interstate
21 commerce.
22      52.  The evidence establishes that Defendants' 'pet food'
23 labeling is false and misleading.
24      53.  Accordingly, Defendants' food is misbranded under
25 21 U.S.C. § 343(a)(1), and Defendants' distribution of these
26 products in interstate commerce violates 21 U.S.C. § 331(a).
27      54.  Defendants have been and are now engaged in making
28 claims that their raw milk and raw milk products can cure,

1  mitigate, treat, or prevent various diseases including, but not
2  limited to, asthma, allergies, eczema, sinus/ear infections,
3  arthritis, and hypertension. The claims on Defendants' website,
4  at least one other website to which Defendants' website has a
5  "hotlink," as well as Defendants' brochure and other promotional
6  materials cause Defendants' products to be drugs within the
7  meaning of the Act, 21 U.S.C. § 321(g)(1)(B).
8      55.  Defendants' products are new drugs within the meaning
9  of 21 U.S.C. § 321(p)(1), because they are not generally
10 recognized, among experts qualified by scientific training and
11 experience to evaluate the safety and effectiveness of drugs, as
12 safe and effective for use under the conditions prescribed,
13 recommended, or suggested in their labeling.
14     56.  There is not now, nor has there ever been, an approved
15 new drug application or an abbreviated new drug application on
16 file with the FDA for any of Defendants' products, nor do
17 Defendants' products qualify for an exemption as investigational
18 new drugs. Accordingly, Defendants' products are unapproved new
19 drugs, within the meaning of 21 U.S.C. § 355.
20              HISTORY OF FDA WARNING TO ORGANIC PASTURES
21     57. FDA issued a Warning Letter to Defendant McAfee, on
22 behalf of Organic Pastures, on February 24, 2005, advising him
23 that the firm's distribution of raw milk and raw milk products in
24 interstate commerce in finished form for human consumption
25 violates the PHSA, 42 U.S.C. §§ 264(a) and 271(a), and the
26 implementing regulation, 21 C.F.R. § 1240.61(a). The letter
27 further stated that failure to make corrections could lead to
28 regulatory action, including seizure, injunction, and/or

_____
COMPLAINT FOR PERMANENT INJUNCTION

prosecution.

58.  Despite FDA's warning, the most recent evidence confirms that Defendants continue to distribute raw milk and raw milk products in final form for human consumption in violation of the PHSA and the Act.  Based on Defendants' most recent course of conduct, it is evident that, unless restrained by order of this Court, Defendants will continue to distribute raw milk and raw milk products in violation of the PHSA, 21 U.S.C. §§ 264(a) and 271(a), and the implementing regulation, 21 C.F.R. § 1240.61(a), distribute misbranded foods in violation of the Act, 21 U.S.C. § 331(a), and distribute unapproved new drugs in violation of the Act, 21 U.S.C. § 331(d).

WHEREFORE THE PLAINTIFF PRAYS:

I.   That Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them, be permanently restrained and enjoined from directly and indirectly violating the PHSA, 42 U.S.C. § 264(a), by contributing to the introduction, transmission, or spread of communicable diseases between the states or into the United States.  The Defendants past conduct makes clear any lesser remedy would not stop the violations set forth herein.  Specifically, Defendants should be enjoined from directly and indirectly introducing and delivering for introduction, and causing to be introduced and delivered for introduction, into interstate commerce, raw (unpasteurized) milk and raw (unpasteurized) milk products in any form (e.g. frozen, partially-frozen, liquid, dry, powdered), including, but not

_____
COMPLAINT FOR PERMANENT INJUNCTION

1  limited to, products labeled for human consumption or pet food
2  and products with labeling that makes them drugs within the
3  meaning of the Act; and
4      II.    That Plaintiff be granted judgment for its costs
5  herein, and that this Court grant such other and further relief
6  as it deems just and proper.

7  DATED this 20th  day of November, 2008.

                                Respectfully submitted,
                                McGREGOR W. SCOTT
                                United States Attorney

                                /s/ Stephanie Hamilton Borchers
                                STEPHANIE HAMILTON BORCHERS
                                Assistant United States Attorney

                                ROGER GURAL
                                Trial Attorney
                                Office of Consumer Litigation
                                Department of Justice
                                Civil Division
                                P.O. Box 386
                                Washington, D.C. 20044

OF COUNSEL:

THOMAS R. BARKER
Acting General Counsel

GERALD F. MASOUDI
Chief Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

MICHELE LEE SVONKIN
Associate Chief Counsel for Enforcement
United States Department of
 Health and Human Services
Office of the General Counsel
5600 Fishers Lane, GCF-1
Rockville, MD 20857
(301) 827-2803

_____
COMPLAINT FOR PERMANENT INJUNCTION