UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:08-cv-1786 OWW GSA |
| | ) | |
| Plaintiff, | ) | ORDER AFTER SCHEDULING |
| | ) | CONFERENCE |
| v. | ) | |
| | ) | Settlement Conference Date: |
| ORGANIC PASTURES DAIRY COMPANY | ) | 5/7/09 10:30 Ctrm. 10 |
| LLC, corporation and MARK | ) | |
| McAFEE, an individual, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

I.   Date of Scheduling Conference.

     March 5, 2009.

II.  Appearances Of Counsel.

     Stephanie Hamilton Borchers, Esq., Assistant United States

Attorney, appeared on behalf of Plaintiff.

     Roger Gural, Esq., appeared on behalf of Plaintiff United

States Office of Consumer Litigation.

     Michelle Svonkin, Esq., appeared on behalf of United States

Food & Drug Administration.

     Lombardo & Gilles, LLP by J. Kenneth Gorman, Esq., appeared

on behalf of Defendants Organic Pastures Dairy Company LLC and

Mark McAfee, an individual.

III.  Summary of Pleadings.

1.   The United States alleges that Defendants have sold raw milk in interstate commerce for human consumption, that Defendants' "pet food only" label is false and misleading, and that Defendants are making drug claims for their raw milk and raw milk products.  The United States seeks to enjoin and restrain Defendants from violating:

a.   42 U.S.C. § 264, by engaging in conduct that may endanger the public health and safety by contributing to the introduction, transmission, or spread of communicable diseases between the states or into the United States, through their distribution, in interstate commerce, of raw (unpasteurized) milk and raw (unpasteurized) milk products in final package form for human consumption, in violation of 21 C.F.R. § 1240.61(a);

b.   21 U.S.C. § 331(a), by introducing or delivering, and causing to be introduced or delivered, into interstate commerce food that is misbranded within the meaning of 21 U.S.C. § 343(a)(1); and

c.   21 U.S.C. § 331(d), by introducing or delivering, and causing to be introduced or delivered, into interstate commerce, new drugs within the meaning of 21 U.S.C. § 321(p) that are neither approved under 21 U.S.C. § 355(a), nor exempt from approval pursuant to 21 U.S.C. § 355(i).

2.   This statutory injunction proceeding is brought under the Public Health Service Act (the "PHSA"), 42 U.S.C. §§ 264 and 271, and the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. § 332(a).  The United States incorporates by reference its Complaint, filed November 20, 2008 (Doc. 1).

2

1    <u>Answer to Complaint</u>.

2       3.   Defendants have specifically admitted and denied

3    various allegations.   In summary, Defendants deny selling raw

4    milk in interstate commerce for human consumption; deny that

5    their labels are misleading, or that they are making drug claims

6    for their raw milk and raw milk products.

7       4.   Defendants also assert that many of the government's

8    claims are moot, and that many of the acts alleged were done with

9    the acquiescence and consent of government agencies.

10      5.   Defendants allege that many of the acts or omissions

11   alleged have stopped and/or been altered rendering injunctive

12   relief moot.

13      6.   Defendants allege many of the acts or omissions were

14   performed with the consent, agreement and/or the direction of

15   government entities with jurisdiction thereof, and such acts or

16   omissions by these defendants are/were privileged and may not be

17   enjoined.

18      7.   Defendants allege that some of the acts, circumstances

19   or omissions alleged, in particular, the context of websites of

20   other entities, are beyond the authority or control of these

21   Defendants, thus injunctive relief may not issue against them.

22      8.   Defendants allege the allegations in this matter have

23   been resolved in a related criminal action, rendering these

24   allegations moot by the doctrines of settlement and compromise

25   and/or *res judicata*.

26      9.   Defendants allege Plaintiff, prior to the filing of

27   this complaint, agreed to and/or acquiesced to the acts and

28   omissions now complained of against these Defendants and, thus,

                                    3

1    said complaint is barred by the equitable doctrines of waiver

2    and/or estoppel.

3    IV.   Orders Re Amendments To Pleadings.

4        1.   The parties do not anticipate amending the pleadings at

5    this time.

6    V.   Factual Summary.

7        A.   Admitted Facts Which Are Deemed Proven Without Further

8    Proceedings.

9          1.   Defendant, Organic Pastures Dairy Company LLC

10    ("Organic Pastures"), is incorporated under the laws of the State

11    of California, with its principal place of business located at

12    7221 South Jameson, Fresno, California.

13          2.   Defendant Mark McAfee, an individual, is the co-

14    founder and managing member of Organic Pastures.  Mr. McAfee is

15    the most responsible individual for the day-to-day operations of

16    Organic Pastures.  Specifically, he is responsible for, and has

17    authority over, all of Organic Pastures' manufacturing and

18    distribution operations.  Mr. McAfee resides and conducts

19    business in California, within the jurisdiction of this Court.

20          3.   Defendants have been, and are now, engaged in

21    milking cows and packaging, labeling, selling, and distributing,

22    in interstate commerce, raw milk and raw milk products including,

23    but not limited to, cream, butter, buttermilk and colostrum.

24          4.   Defendants promote their products as

25    "unpasteurized" or "raw," and FDA's independent analysis has

26    confirmed that Defendants' products are raw.

27          Facts Related to Plaintiff's Food Charges

28          5.   In September, 2007, numerous frozen samples of

1  Organic Pastures' raw milk and raw milk products were distributed

2  to customers.  The labeling located on the exterior of the

3  shipping container carrying these products read as follows:

4          "In compliance with FDA regulations and CFR 1240.61,
        [Organic Pastures] does not take orders or ship any raw
5          dairy products for 'human consumption' outside of the
        State of California.  All out of state product sales
6          are labeled and intended for: 'Pet Food' consumption
        only.  The quality and safety of this 'pet food'
7          product is identical to what is offered to consumers in
        the California retail market."  (hereafter, referred to
8          as "Defendants' 'pet food' labeling").

9          6.   Nowhere on the individual retail product is there

10  a label indicating that the product is to be limited to pet

11  consumption or identifying the product as pet food.  The labels

12  on the individual retail products bear statements such as "the

13  best milk you'll ever taste," and state that Organic Pastures

14  products "are highly recommended by . . . thousands of happy

15  healthy people."

16          7.   The labels on the individual retail products

17  distributed by Organic Pastures in September 2007 also contain

18  the following statement:

19          "Raw (unpasteurized) milk and raw milk dairy products
        may contain disease-causing micro-organisms.  Persons
20          at highest risk of disease from these organisms include
        newborns and infants; the elderly; pregnant women;
21          those taking corticosteriods, antibiotics or antacids;
        and those having chronic illnesses or other conditions
22          that weaken their immunity."

23          8.   This statement (hereafter, referred to as

24  "Defendants' Statement") indicates that Defendants' raw milk and

25  raw milk products are intended for human consumption.

26          9.   During FDA's September 2007 inspection of Organic

27  Pastures, Defendant McAfee confirmed that, with respect to

28  Defendants' raw cream, stickers stating "Cat or Dog Food only" or

5

1  "Pet Food consumption only" are placed only on the exterior of

2  shipping containers for products shipped out of state and not on

3  the individual retail products.

4          10.   In September, 2007, Organic Pastures sent an e-

5  mail regarding raw milk that read, in part: "Dear raw milk

6  customer; Absolutely! Raw milk can be shipped via UPS to all US

7  states *** We would love you to try raw milk today! *** Raw milk

8  is known for its ability to re-build your immune system ***

9  Remember to tell everyone who has asthma that they will be cured

10  by raw milk ***."  Nowhere in this e-mail does it state that raw

11  milk is intended to be used as pet food.

12          11.   In June 2007, Defendant McAfee sent an e-mail to

13  an FDA public affairs specialist in which he objected to an FDA

14  presentation regarding the health risks associated with raw milk.

15  In the e-mail, he states that "when raw milk is tested and

16  labeled as intended for direct human consumption it is extremely

17  safe," and makes numerous statements reflecting his intention

18  that raw milk be consumed by humans.

19          12.   Defendants distributed numerous samples of raw

20  milk and raw milk products in interstate commerce in February

21  2006.  Like the products distributed in September 2007, these

22  products were shipped in containers that contained Defendants'

23  'pet food' labeling.  The individual retail products were not

24  labeled as limited to pet food use.  The individual retail

25  products contained the "best milk you'll ever taste" statement,

26  the recommendation of "thousands of happy healthy people," and

27  Defendants' Statement regarding human consumption.

28          13.   In July 2005, an undercover FDA investigator

6

ordered numerous raw milk and raw milk products directly from Organic Pastures by telephone.  An Organic Pastures sales representative completed this order after the FDA investigator informed her that the milk was intended for herself and her family.  When asked about the 'pet food' labeling, the sales representative stated that the product was safe for humans and that this statement was a legal loophole for the firm to be able to ship the product out of state.  These products, which were transported to the State of Washington, were shipped in a container to which Defendants' 'pet food' labeling was affixed. Like the samples collected in September 2007, the individual retail products in this shipment contained Defendants' Statement regarding human consumption and were not labeled for pet food use.

14.   Defendants have sold raw milk and raw milk products in "final package form."  Defendants' products are sold directly to customers rather than to dairy processing plants for pasteurization.  Customers are not required to take any additional steps (other than thawing) in order to consume Defendants' products.  Defendants' website contains directions for consumers to thaw their products and states that freezing "has little effect on the important health benefits that raw dairy products provide."

15.   On March 17, 2008, FDA investigators confirmed that Defendants' website (www.organicpastures.com) (hereafter, "Defendants' website") provides the following statement to explain the 'pet food' labeling on some of its products:

"FDA law CFR 1240.61 states that it is illegal for

7

1  anyone to transport raw dairy products across state
   lines 'in final package form for direct human
2  consumption unless that product has been pasteurized.'
   In compliance with CFR 1240.61, [Organic Pastures]
3  labels and ships its products outside of California for
   'pet consumption only.'"

4

5  Defendants have included a similar statement on their website's

6  ordering page.

7          16.   On March 8, 2005, an FDA investigator confirmed

8  that Defendants' website contained the following statement in

9  response to a question about the 'pet food' labeling on products

10 sold outside of California:

11         "FDA law CFR 1240.61 states that it is illegal for
           anyone to transport raw dairy products across state
12         lines 'in final package form for direct human
           consumption unless that product has been pasteurized.'
13         [Organic Pastures] has creatively labeled its products
           for sale outside of California in such a way that it is
14         not illegal under the law . . .   This provides raw food
           drinkers the freedom to choose a raw product over a
15         dead product.   It is also great pet food."   (emphasis
           added).

16         17.   According to Defendants' "breaking news" page on

17 its website, reviewed by an FDA investigator in July 2005, "There

18 are absolutely no safety or quality differences between the

19 Oregon products and the [Organic Pastures] products sold

20 throughout California.   There are also no requirements to include

21 a statement which says, 'not for human consumption.'"

22              Facts Related To Plaintiff's Drug Charges

23         18.   In March 2008, FDA investigators confirmed that

24 Defendants' website contains numerous hyperlinks ("hotlinks") to

25 other websites.   Defendants direct customers to these other

26 websites as follows:

27         "[Organic Pastures] may not make a medical claim or
           post cures for any disease process relative to any
28         [Organic Pastures] product.   That is a crime under

                              8

current FDA law.  We can recommend that you visit
www.realmilk.com, www.westonaprice.org, or
www.mercola.com, and other websites that will list
literally 50 different illnesses that are directly,
naturally, and positively affected by consuming raw
milk.  Please see the testimonial past of this website
for a list of links, testimonial stories of healing and
recovery.  They are dramatic and compelling."

19.  With respect to at least one of the other websites referred to above, www.localforage.com, customers can automatically be directed from Defendants' website to a website that contains numerous claims that raw milk and raw milk products can cure, mitigate, treat, or prevent various diseases including, but not limited to, asthma, eczema, psoriasis, constipation, Crohn's disease, arthritis, and hypertension.  Defendants' products are referred to by name throughout the www.localforage.com website.

20.  Defendants distribute promotional materials that tout the health benefits of their raw milk and raw milk products.

21.  There is not now, nor has there ever been, an approved new drug application or an abbreviated new drug application on file with the FDA for any of Defendants' products, nor do Defendants' products qualify for an exemption as investigational new drugs.

22.  It is uncontested that Defendants faced similar charges in a related criminal action which concluded in settlement by plea agreement filed on December 22, 2008, and which was accepted on January 9, 2009, in the United States District Court for the Eastern District of California. Defendants pled guilty to two counts of misdemeanor introduction and delivery for introduction into interstate commerce of

9

misbranded food, in violation of 21 U.S.C. §§ 331(a) and

333(a)(1).  In their plea agreement, Defendants agreed to the

following facts: (1) on two separate occasions "one or more of

defendant Organic Pastures' agents or employees, with the

knowledge and consent of Organic Pastures, caused (a) a box of

raw milk and dairy products, labeled as or otherwise represented

to be 'pet food,' to be sent by defendant Organic Pastures" into

interstate commerce, "knowing that the intended use of such foods

and/or dietary supplements was for human consumption;" and (2)

Organic Pastures' raw milk and raw milk products "were foods

and/or dietary supplements, and were misbranded when so

introduced into or delivered for introduction into interstate

commerce, in that they were falsely and misleadingly labeled as,

or otherwise represented to be 'pet food,' when they were

actually intended for human consumption in violation of [21

U.S.C. §§ 331(a) and 333(a)(1)]."

        B.    Contested Facts.

            1.    The parties do not agree whether raw milk products

may contain harmful bacteria, including literia monocytogenes and

e. coli, among others, and do not agree whether raw milk can pose

significant health risks, including illness and death.

            2.    The parties do not agree whether Defendants

violated federal law when they sold raw milk and raw milk

products in Oregon.  Defendants contend Oregon allowed them to

sell raw milk products for 12 months; Plaintiff contends state

laws are irrelevant to whether Defendants violated regulations

regarding interstate commerce.

            3.    The parties disagree as to the facts surrounding

1  the September 2006 and September 2007 CDF ordered recalls of
2  Defendants' raw milk.

3          4.    The parties disagree whether the FDA's prior
4  warning to Defendant McAfee, on behalf of Organic Pastures, on
5  February 24, 2005, advising him that the firm's distribution of
6  raw milk and raw milk products in interstate commerce in finished
7  form for human consumption violates the PHSA, 42 U.S.C. §§ 264(a)
8  and 271(a), and the implementing regulation, 21 C.F.R.
9  § 1240.61(a) applied to pet foods.  Plaintiff contends McAfee
10  intended his pet food for human consumption.

11          5.    Defendants disagree with FDA concerns about the
12  dangers of raw milk.

13          6.    The parties do not agree whether Defendants
14  distributed raw milk or caused raw milk to be distributed in
15  interstate commerce.

16          7.    The parties do not agree whether Defendants'
17  promotional materials reference specific diseases.
18  VI.  Legal Issues.

19      A.   Uncontested.

20          1.    Jurisdiction exists under 21 U.S.C. § 332(a) and
21  28 U.S.C. §§ 1331 and 1345.  This Court also has jurisdiction
22  under the PHSA, as well as its general equity power to enjoin
23  conduct that endangers the public health and safety, such as
24  conduct that violates the PHSA, 42 U.S.C. § 264, and the
25  implementing regulation thereunder, 21 C.F.R. § 1240.61(a).

26          2.    Venue is proper under 28 U.S.C. § 1391(b) and (c).
27          Food Charges.

28          3.    The PHSA, 42 U.S.C. § 264(a), authorizes the

11

Secretary of the Department of Health and Human Services to make and enforce regulations to prevent the introduction, transmission, or spread of communicable diseases from one state to another.

4.   Section 368(a) of the PHSA, 42 U.S.C. § 271(a), makes any violation of a regulation issued under 42 U.S.C. § 264 a crime.

5.   Pursuant to the PHSA, FDA has promulgated the following ban against the interstate sale of raw milk and raw milk products: "No person shall cause to be delivered into interstate commerce or shall sell [or] otherwise distribute . . . any milk or milk product in final package form for direct human consumption unless the product has been pasteurized or is made from dairy ingredients (milk and milk products) that have all been pasteurized . . ." 21 C.F.R. § 1240.61(a).

6.   "Milk product" is defined as food "made exclusively or principally from the lacteal secretion obtained from one or more health milk-producing animals . . ." 21 C.F.R. § 1240.3(j).

7.   Defendants' milk and milk products are food, as defined by the Act, 21 U.S.C. § 321(f), which is sold in interstate commerce.

8.   The introduction and delivery for introduction into interstate commerce of misbranded foods violates section 331(a) of the Act.  21 U.S.C. § 331(a).

9.   A food is deemed misbranded under the Act if its label is false or misleading in any particular.  21 U.S.C. § 343(a)(1).

12

1          <u>Drug Charges</u>.

2          10.   Any product is a drug if it is "intended for use

3    in the diagnosis, cure, mitigation, treatment, or prevention of

4    disease."   21 U.S.C. § 321(g)(1)(B).

5          11.   The intended use of a product may be determined

6    from any relevant source.   <u>See</u> 21 C.F.R. § 201.128.

7          12.   The act defines labeling as "all labels and other

8    written, printed, or graphic matter (1) upon any article or any

9    of its containers or wrappers, or (2) accompanying such article."

10   21 U.S.C. § 321(m).   The term "accompanying" in the second clause

11   of § 321(m) is not restricted to labeling that is on or in the

12   article at issue and that physical attachment is not necessary;

13   rather, an article "accompanies" another when one supplements or

14   explains the other such as a committee report of the Congress

15   "accompanies" a bill.

16         13.   Under the Act, a new drug is any drug "the

17   composition of which is such that such drug is not generally

18   recognized, among experts qualified by scientific training and

19   experience to evaluate the safety and effectiveness of drugs, as

20   safe and effective for use under the conditions prescribed,

21   recommended, or suggested in the labeling thereof . . ."   21

22   U.S.C. § 321(p)(1).

23         14.   A new drug may not be introduced or delivered for

24   introduction into interstate commerce unless FDA has approved a

25   new drug application or an abbreviated new drug application with

26   respect to the drug, or if it qualifies for an exemption as an

27   investigational new drug.   21 U.S.C. § 355.

28         15.   The introduction and delivery for introduction

                              13

1  into interstate commerce of an unapproved new drug violates

2  section 331(d) of the Act.  21 U.S.C. § 331(d).

3       B.   Contested.

4            1.   Defendants admit the summary of statutes relied on

5  by Plaintiff, but deny they violated the statutes because, among

6  other reasons, their food products are not drugs as defined by

7  the statutes.

8  VII. Consent to Magistrate Judge Jurisdiction.

9            1.   The parties have not consented to transfer the

10 case to the Magistrate Judge for all purposes, including trial.

11 VIII.      Corporate Identification Statement.

12           1.   Any nongovernmental corporate party to any action in

13 this court shall file a statement identifying all its parent

14 corporations and listing any entity that owns 10% or more of the

15 party's equity securities.  A party shall file the statement with

16 its initial pleading filed in this court and shall supplement the

17 statement within a reasonable time of any change in the

18 information.

19 IX.  Settlement Conference.

20           1.   A Settlement Conference is scheduled for May 7, 2009,

21 at 10:30 a.m. in Courtroom 10 before the Honorable Gary S.

22 Austin, United States Magistrate Judge.

23           2.   Unless otherwise permitted in advance by the

24 Court, the attorneys who will try the case shall appear at the

25 Settlement Conference with the parties and the person or persons

26 having full authority to negotiate and settle the case on any

27 terms at the conference.

28           3.   Permission for a party [not attorney] to attend

**14**

1   by telephone may be granted upon request, by letter, with a copy

2   to the other parties, if the party [not attorney] lives and works

3   outside the Eastern District of California, and attendance in

4   person would constitute a hardship.   If telephone attendance is

5   allowed, the party must be immediately available throughout the

6   conference until excused regardless of time zone differences.

7   Any other special arrangements desired in cases where settlement

8   authority rests with a governing body, shall also be proposed in

9   advance by letter copied to all other parties.

10          4.   Confidential Settlement Conference Statement.

11  At least five (5) days prior to the Settlement Conference the

12  parties shall submit, directly to the Magistrate Judge's

13  chambers, a confidential settlement conference statement.   The

14  statement should not be filed with the Clerk of the Court nor

15  served on any other party.   Each statement shall be clearly

16  marked "confidential" with the date and time of the Settlement

17  Conference indicated prominently thereon.   Counsel are urged to

18  request the return of their statements if settlement is not

19  achieved and if such a request is not made the Court will dispose

20  of the statement.

21          5.   The Confidential Settlement Conference

22  Statement shall include the following:

23               a.   A brief statement of the facts of the

24  case.

25               b.   A brief statement of the claims and

26  defenses, i.e., statutory or other grounds upon which the claims

27  are founded; a forthright evaluation of the parties' likelihood

28  of prevailing on the claims and defenses; and a description of

                              15

1  the major issues in dispute.

2          c.   A summary of the proceedings to date.

3          d.   An estimate of the cost and time to be

4  expended for further discovery, pre-trial and trial.

5          e.   The relief sought.

6          f.   The parties' position on settlement,

7  including present demands and offers and a history of past

8  settlement discussions, offers and demands.

9       6.   The parties shall notify the Court following completion

10  of their settlement efforts, whether there is any need for

11  further scheduling in the case.  If so, a Scheduling Conference

12  shall be set within twenty (20) days following the exhaustion of

13  settlement efforts.

14

15  IT IS SO ORDERED.

16  **Dated:    March 5, 2009**              **/s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

16