Robin B. Ratner, Esq. (SBN 195788)
*rratner@structurelaw.com*
STRUCTURE LAW GROUP, LLP
1801 Century Park E. Suite 475
Los Angeles, CA 90067
Telephone: (310) 818-7500
Facsimile: (408) 441-7501

Attorneys for Defendants Raw Farm, LLC fka
Organic Pastures Dairy Company, LLC; Mark
McAfee; and Non-Party Aaron McAfee

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>ORGANIC PASTURES DAIRY COMPANY, LLC, a corporation, and MARK McAFEE, an individual,<br><br>                Defendants. | CASE NO. 1:08-CV-01786-JLT-SAB<br><br>**OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN CASE AND PETITION FOR AN ORDER TO SHOW CAUSE WHY RAW FARM, LLC F/K/A ORGANIC PASTURES DAIRY COMPANY, LLC; MARK MCAFEE; AND AARON MCAFEE SHOULD NOT BE HELD IN CIVIL CONTEMPT**<br><br>Date:     June 9, 2023<br>Time:     9:30 AM<br>Dept.:    Courtroom 4, 7th floor, Fresno<br>Judge:    Hon. Jennifer L. Thurston |

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS ........................................................................................ 2

III. PROCEDURAL BACKGROUND ........................................................................... 3

IV. PRIOR MEET AND CONFERS BETWEEN COUNSEL ................................... 12

V.  LEGAL STANDARD FOR CIVIL CONTEMPT .............................................. 13

VI. ARGUMENT .......................................................................................................... 14

    a.  The Instant Motion to Hold Non-Party Aaron McAfee in Contempt
       Constitutes a Violation of his Due Process Rights ........................................... 14

    b.  A Finding of Civil Contempt is Unwarranted because Raw Farm has
       Taken All Reasonable Steps to Comply in Good Faith ................................... 15

       i.   Raw Farm has FDA Approval to Distribute its Raw Cheddar Cheese in
          Interstate Commerce ................................................................................. 15

       ii.  Raw Farm has FDA Approval to Distribute its Raw Kefir Pet Food
          Product in Interstate Commerce ............................................................... 16

       iii. Defendants have Affixed the Required Statements Pursuant to
          Paragraph 2(f) of the Court's 2010 Order ............................................... 16

       iv.  Any Alleged Violations of the 2010 Order were not Willful, and Raw
          Farm took Immediate Steps to Rectify Any Alleged Violations ................ 17

       v.   Any Alleged Non-Compliance was Due to Impossibility, Not
          Disobedience ............................................................................................ 17

    c.  The FDA has Previously Determined that Raw Farm's Raw Cheddar
       Cheese is a Food Product Pursuant to Title 21, Part 133, Not a "Drug" as
       Defined by FDCA Section 321(g)(1) ............................................................... 18

    d.  Raw Farm Never Intended for its Raw Cheddar Cheese Product to be
       Considered a Drug ............................................................................................ 20

       i.   Raw Farms' Raw Cheddar Cheese is Not an Unapproved New Drug,
          and Raw Farm has Never Sought FDA Approval for its Raw Cheddar
          Cheese as a New Drug ............................................................................. 21

    e.  The Relief Requested by Plaintiff is Egregious, Excessive, and
       Unwarranted .................................................................................................... 22

VII. CONCLUSION ........................................................................................................ 24

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

1

# <u>TABLE OF AUTHORITIES</u>

2

## Cases

3
*Balla v. Idaho St. Bd. of Corrections,* 869 F.2d 461 (9th Cir. 1989) ............................................ 13

4
*Calvillo Manriquez v. Devos,* 411 F.Supp. 3d 535, 540 (N.D. Cal. 2019)...................................... 23

5
*F.T.C. v. Affordable Media* 179 F.3d 1228 (9th Cir. 1999) .................................................... 14, 18

6
*Garcia v. City of LA,* CV 19-6182 DSF (PLAx), 2020 WL 6586305 (C.D. Cal.
7
   Sept. 23, 2020) ............................................................................................................................ 23

8
*Hotaling v. Superior Court* (1923) 191 Cal. 501 ..................................................................... 14, 22

9
*In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693 (9th Cir.
   1993) ........................................................................................................................................... 13

10
*In re Martin* (1977) 71 Cal.App.3d 472 ........................................................................................ 14

11
*Mannick v. Kaiser Found. Health Plan, Inc.,* No. C 03-5905 PJH, 2006 WL
12
   3734390 (N.D. Cal. Dec. 18, 2006) ........................................................................................... 24

13
*Parsons v. Ryan,* 949 F.3d 443 (9th Cir. 2020)............................................................................. 23

14
*Raiden v. Superior Court* (1949) 34 Cal.2d 83 ............................................................................. 14

15
*Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006)...................................... 13

16
*Rinehart v. Brewer,* 483 F.Supp. 165 (S.D. Iowa 1980) .......................................................... 13, 15

17
*Schwarz v. Superior Court* (1923) 111 Cal. 106 ....................................................................... 14, 22

18
*Sekaquaptewa v. MacDonald,* 544 F.2d 396, 404 (9th Cir.1976) ................................................. 14

19
*Stone v. City and County of San Francisco,* 968 F.2d 850 (9th Cir.1992).................................... 13

20
*Trueblood v. Wash. State Dep't of Social & Health Servs.,* No. C14-1178-MJP,
   2016 WL 3632486 (W.D. Wash. July 7, 2016) ......................................................................... 24

21
*United States v. Cole,* No. 3:13-cv-01606-SI, 2015 WL 12670520 (D. Or. Feb. 5,
22
   2015) ........................................................................................................................................... 23

23
*United States v. Fusion Health & Vitality LLC,* Case No. 4:20-cv-296, 2021 WL
   214982 (S.D. Ga. Jan. 8, 2021) .................................................................................................. 23

24
*United States v. Genesis II Church of Health & Healing,* No. 20-21601-CIV-
25
   Williams, 2020 WL 4690217 (S.D. Fla. Aug. 3, 2020) ............................................................. 23

26
*United States v. Innovative BioDefense, Inc.,* No. 8:18 CV 996-DOC (JDE), 2020
   WL 5809943 (C.D. Cal. May 4, 2020) ....................................................................................... 23

27
*United States v. LeBeau,* 985 F.2d. 563 (7th Cir. 1993) ............................................................... 23

28
*United States v. Syntrax Innovations, Inc.,* 149 F. Supp. 2d 880 (E.D. Mo. 2001)........................ 23

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

*United States v. Vita-Erb, Ltd.,* No. 05-3494-CV-S-FJG, 2006 WL 3313941
  (W.D. Mo. Nov. 14, 2006) ............................................................................ 23

*United States v. Vital Health Prods., Ltd.,* 786 F. Supp. 761, 779 (E.D. Wis. 1992) ................... 23

*Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885 (9th Cir.
  1982) ................................................................................................. 13, 14, 15

## Statutes

21 C.F.R. 1240.61 ...................................................................................... 4, 11, 19

21 C.F.R. 133 ........................................................................................ 4, 6, 19, 20

21 C.F.R. 133(a)(1) ......................................................................................... 18

21 C.F.R. 133(c) ............................................................................................ 18

21 C.F.R. 314 ............................................................................................... 21

21 C.F.R. 314(a)(3) ........................................................................................ 19

21 C.F.R. 314(b) ........................................................................................... 19

21 C.F.R. 507 Subpart C ................................................................................... 8, 9

21 C.F.R. 507.3 ............................................................................................. 9

21 C.F.R. 507.5(d) .......................................................................................... 9

21 U.S.C. 117.3 ............................................................................................ 18

21 U.S.C. 321(g)(1) ..................................................................................... 20, 21

21 U.S.C. 507 ................................................................................................ 7

21 U.S.C. 507 Subpart B ................................................................................... 6

21 U.S.C. 507 Subpart C ................................................................................... 6

FDCA 201(f) ................................................................................................. 18

FDCA 201(g)(1) ............................................................................................. 19

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

Defendants Raw Farm, LLC, formerly known as Organic Pastures Dairy Company, LLC, and Mark McAfee and Non-Party Aaron McAfee (collectively, "Raw Farm") hereby oppose Plaintiff United States of America's ("Plaintiff") Motion To Reopen Case And Petition For An Order To Show Cause Why Raw Farm, LLC f/k/a Organic Pastures Dairy Company, LLC; Mark McAfee; And Aaron McAfee Should Not Be Held In Civil Contempt ("Motion").

## I.   <u>INTRODUCTION</u>

In this Motion, the United States of America ("Plaintiff") seeks to improperly and baselessly request that this Court hold Raw Farm in civil contempt for alleged failure to comply with the Memorandum Decision and Order Re: United States of America's Motion for Summary Judgment (Doc. 22; Docket No. 48), issued in United States of America v. Organic Pastures Dairy Company, *et al.*, Case No. 1:08-CV-01786-OWW-GSA, on April 20, 2010 ("2010 Order"). This Motion is nothing but a waste of judicial time and resources in an attempt to unjustifiably persecute a small family business that complies with all regulatory governing agencies. Simply put, this Motion satisfies none of the criteria this Court utilizes to hold parties in civil contempt, nor do the undisputed facts demonstrate that Raw Farm is in contempt of the 2010 Order.

Raw Farm has taken all reasonable steps to comply in good faith. Each and every time Raw Farm was notified of any alleged non-compliance, Raw Farm took immediate steps to rectify the deficiencies. Any alleged failure to comply has been due to impossibility, or good faith human error. Indeed, Plaintiff should be very familiar with the concept of good faith human error given that the moving papers request that Raw Farm ***not*** be held in civil contempt—a phrase repeated not only in the title of this Motion, but also throughout the Motion and supporting declarations, such as Program Division Director Darla Bracy's Declaration in support of the Motion. Just as Raw Farm recognizes that this was a good faith error, at least four members of the Department of Justice ("DOJ") failed to notice before filing this public document, so should Plaintiff recognize that any error by Raw Farm was just that. Unlike the DOJ, Raw Farm, upon notice, immediately corrected all inadvertent error.

The 2010 Order was intended to penalize Raw Farm's actions thirteen years ago, and as punishment, requires Raw Farm to provide notice to the Food and Drug Administration ("FDA")

- 1 -

of all actions, under the guise of public health and safety. The 2010 Order mandates mostly notice requirements and is basically a form-over-substance penalty. Plaintiff's motivation in filing the instant Motion likewise has nothing to do with the health or safety of the American people. Instead, Plaintiff seeks to further its own well-documented agenda against producers of raw dairy products, like Raw Farm, by attempting to mislead the Court to a conclusion which is based on neither reason nor reality.

Raw Farm requests that this Court consider its numerous, lengthy, costly, and genuine efforts to comply with the 2010 Order, and that any error to which it was alerted was remediated and deny the instant Motion. Raw Farm further respectfully asks this Court to consider termination of the 2010 Order and hold Raw Farm responsible simply to the same standards as every other American farm—compliance with FDA regulations. The FDA does not have any standards for raw milk for human consumption. The 2010 court order is an FDA attempt to reach into intrastate commerce and regulate raw dairy products that they do not have authority over (except 60-day aged raw cheeses). Raw dairy products are regulated at the state level. FDA policies are blatantly anti-raw milk, yet raw dairy products are regulated with unique standards and 100% legal in California.

## II.   **STATEMENT OF FACTS**

The facts of this case are simple. Raw Farm is neither a criminal enterprise, nor a pharmaceutical company. This is a family of industrious California farmers who simply want the same opportunity afforded to all other dairy farmers in America—to produce milk products for their country. It just so happens that these products are produced according to more traditional farming practices, nothing more.

Raw Farm is a small family business located in the heart of Fresno, California. What began in 1998 as founder Mark McAfee's dream to answer consumer demand for tested, nutritious, raw whole dairy products has grown into a small but steadfast pillar of California's agricultural scene. (*See* Declaration of Aaron McAfee in Support of Opposition to Plaintiff's Motion to Reopen Case and Petition for an Order to Show Cause ("McAfee Decl.") at ¶3) Originally operating under the name "Organic Pastures Dairy Company, LLC" ("OPDC"), the farm processed and sold rich organic dairy products, including milk and cheese. (McAfee Decl. at ¶ 4)

As the years progressed, Mr. Mark McAfee sought to further improve the nutritional value and quality of his farm's dairy products. He has pioneered new and approved farming and processing practices to produce "raw" milk and cheese. Such products are produced without pasteurization, comply with California and FDA temperature and aging requirements, and remain safe, healthy, and delicious. Raw Farm uses multiple safety methods, including rapid BAX PCR technology for testing pathogens on every batch, and other unique safety measures which meet both California and FDA standards. Specifically at issue in this case are Raw Farm's Raw Kefir Pet Food product ("Pet Food Product") and Raw Cheddar Cheese ("Cheese Product"), both of which are approved by the FDA, California Department of Agriculture ("CDFA"), and California Department of Public Health ("CDPH").

**III.    PROCEDURAL BACKGROUND**

On April 20, 2010, the Court issued its Memorandum Decision and Order Re: United States of America's Motion for Summary Judgment ("2010 Order"), consisting of *twenty-nine* pages of onerous, costly changes and mandates, against OPDC. (*See* Memorandum Decision and Order Re: United States of America's Motion for Summary Judgment (Doc. 22; Docket No. 48), issued in United States of America v. Organic Pastures Dairy Company, et al., Case No. 1:08-CV-01786-OWW-GSA, on April 20, 2010*; See also* McAfee Decl. at ¶6). With numerous requirements and no sunset provision whatsoever, Raw Farm was ordered, in perpetuity, to conform to obligations that other American farms and businesses simply do not have to meet. Raw Farm amended its practices and earnestly complied with the 2010 Order. (McAfee Decl. at ¶ 7).

Beginning on or about April 23, 2019, the FDA conducted a four-day inspection of its processing plant. During that time, FDA Investigator Lisa Nakagawa took over 181 swabs and samples to test for listeria and salmonella pathogens. (McAfee Decl. at ¶ 8) Results were not delivered until May 30, 2019, at which point the FDA notified Raw Farm that no pathogens were detected, and "all controls [were] satisfactory." (*Id.*)

On April 24, 2019, in the midst of the inspection, Raw Farm openly discussed with the FDA

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

its compliance with 21 C.F.R. 133[1] and 21 C.F.R. 1240.61[2] to ship its raw cheese products interstate. (McAfee Decl. at ¶ 9) Raw Farm understood its actions to be completely within the boundaries of the 2010 Order. (*Id.*) Upon notification that Raw Farm would need to seek further approval from the FDA, Raw Farm immediately complied and requested specific approval for its raw cheese products. (*Id.*)

Moreover, in the same correspondence dated April 24, 2019, Raw Farm notified the FDA that as far back as *September 15, 2017*, it had received approval from the CDFA and CDPH to manufacture its Pet Food Product. Raw Farm further advised that the product's labeling met the requirements of the CDFA, CDPH, FDA, and Association of American Feed Control Officials ("AAFCO")[3]. (McAfee Decl. at ¶10). Approval having been obtained from these agencies, Raw Farm duly notified the FDA that the product was sold, in full compliance with state and federal regulations, across America, and requested further instruction. (*Id.*) However, Raw Farm noted that in or about September 2017, Raw Farm was informed by the FDA that the FDA did not provide pre-market approval for pet food products, and directed Raw Farm to the AAFCO standards, with which they were already in compliance. (*Id.*) **It was impossible for Raw Farm to comply with 2010 Order for FDA pre-market approval for the Pet Food Product because the FDA did not offer such approval.[4]** (*Id.*)

Nevertheless, in the April 24, 2019 correspondence, Raw Farm again requested further

---

[1] As discussed below, 21 C.F.R. 133 governs cheese and related cheese products. Exceptions are outlined permitting cheese to be sold interstate so long as it is cured at a temperature of not less than 35 degrees Fahrenheit and aged for not less than 60 days.

[2] As discussed below, 21 C.F.R. 1240.61 governs the mandatory pasteurization of milk and milk products absent exceptions outlined in 21 C.F.R. 133, which permits cheese to be sold interstate so long as it is cured at a temperature of not less than 35 degrees Fahrenheit and aged for not less than 60 days.

[3] The AAFCO is an independent non-profit organization which guides state, federal, and international feed regulators on both animal feeds and pet foods on topics such as ingredient definitions, label standards, and laboratory standards. The AAFCO collaborates with the FDA in these efforts.

[4] As discussed below, the FDA still does not require that pet food products have premarket approval. (*See* FDA, *Information on Marketing a Pet Food Product*, February 7, 2020, available at https://www.fda.gov/animal-veterinary/animal-health-literacy/information-marketing-pet-food-product#:~:text=There%20is%20no%20requirement%20that,substances%2C%20and%20be%20truthfully%20labeled.)

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

instruction, and specifically asked, "Please let us know what the next steps might be. Up to this point, we have been under the impression that everything we have been doing is 100% compliant with all regulations including the [2010 Order]." Raw Farm specifically requested a response to confirm approval for the Pet Food Product. (McAfee Decl. at ¶ 11)

On or about April 26, 2019, the FDA issued a Form 483 Warning Letter in response to the aforementioned inspection. (McAfee Decl. at ¶ 12). This warning letter took issue with the Pet Food Product and raw cheese products—which Raw Farm addressed in its April 24, 2019 correspondence as being under the good faith understanding that manufacture and sale of these products was compliant with all state and federal laws and the 2010 Order; and took issue with alleged non-compliance with procedural notice requirements pursuant to the 2010 Order. (*Id.*) As explained verbally to the FDA inspector, and memorialized in writing, **Raw Farm was not able to fully comply with the labeling requirements regarding the disclosure statement ("Paragraph 2(f) Statement")[5] on its receipts given that its sales system computer software did not permit additional text to be added to the receipts, which were generated by the system directly**. (McAfee Decl. at ¶ 12)

On May 6, 2019, Raw Farm responded to the warning letter by immediately informing the FDA of the efforts it had taken, and efforts it would take, to comply. (McAfee Decl. at ¶ 13). First, Raw Farm clarified that they had not shipped any products interstate which were not in compliance with state and federal regulations. (*Id.*) Raw Farm reiterated that it had been open and transparent with the FDA at every inspection and, at every inspection, the FDA had approved and affirmed its sale of legally produced raw cheddar cheese products. (*Id.*) Moreover, Raw Farm confirmed that its retail packing slips, primary sales venue, and website homepage complied with the required Paragraph 2(f) Statement. (*Id.*) In a further effort to comply, Raw Farm, at great expense, took

---

[5] As referenced throughout, Paragraph 2(f) of the 2010 Order requires Raw Farm to add the following statement to individual retail invoices and packing slips for each of its products: "Organic Pastures will no longer offer for introduction, introduce, or cause to be introduced into interstate commerce, or deliver or cause to be delivered for introduction into interstate commerce, any unpasteurized raw milk or raw milk products."

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

immediate action to engineer additional software to ensure that the required Paragraph 2(f) Statement was printed on its "pick tickets," and further informed the FDA that it would report the Paragraph 2(f) Statement to all entities which purchased more than 2% of its products. (*Id.*) **Again, Raw Farm reiterated its request for formal authorization from the FDA to produce and sell their Pet Food Product and Cheese Product, as permitted by 21 C.F.R. 133. The FDA did not respond**. (*Id.*)

On May 24, 2019, Raw Farm again emailed the FDA with a separate inquiry for approval to transport raw milk from California to a meeting out of state set for February 2020, so that the product could be sampled and used for study and research. (McAfee Decl. at ¶ 14). **The FDA did not respond until September 6, 2019.** (*Id.*)

On August 26, 2019, Raw Farm again emailed the FDA stating that it continued to manufacture and sell its Cheese Product and Pet Food Product because they followed all state and federal regulations, and they had not received a directive from the FDA to stop such production and sale. (McAfee Decl. at ¶ 15] **The FDA did not respond**. (*Id.*)

On September 6, 2019, five months after the April 24, 2019, inspection, and after ignoring numerous good faith attempts by Raw Farm to contact them for clarity, the FDA provided Raw Farm with the inspection report, and reiterated its contention that Raw Farm was not in compliance with the 2010 Order. (McAfee Decl. at ¶ 16) Specifically, the FDA contended that Raw Farm violated the 2010 Order by distributing its Cheese Product interstate; by distributing its Pet Food Product interstate; by not affixing the required Paragraph 2(f) Statement to its individual retail invoices; and by not sending the required notice to its commercial buyers. In this letter, the FDA denied Raw Farm's request to transport raw milk out of state for the February 2020 meeting. (*See* McAfee Decl., Exhibit 5.) The FDA also denied Raw Farm's request to distribute its Pet Food Product interstate, citing alleged non-compliance with 21 U.S.C. 507 Subpart B[6]. (*Id.*) The FDA also expressed a "concern" that the Pet Food Product would be diverted to human use outside of

---

[6] 21 U.S.C. 507 Subpart C requires the preparation and implementation of a written food safety plan with regard to the manufacture, processing, and packaging of animal food.

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

California, **but explicitly stated that this "concern" did not form the basis of its decision to deny the requested approval**. (*Id.*) Moreover, the **FDA granted approval for Raw Farm to distribute its Cheese Product interstate**. (McAfee Decl. at ¶ 16) This is not the first or the last time the FDA stated "yes" and "no" at the same time, highlighting the inherent challenges of navigating the 2010 Order. (*See* McAfee Declaration at ¶ 3)

On September 25, 2019, Raw Farm responded to and addressed the FDA's September 6, 2019 letter. (McAfee Decl. at ¶ 17) Raw Farm clarified that it had made numerous requests to the FDA for approval of its Pet Food Product, and were repeatedly informed that the FDA could not grant approval because no pre-market approval was required for pet food products. (*Id.*) Raw Farm further disputed the FDA's allegation that it was not in compliance with 21 U.S.C. 507 Subpart C, because it demonstrated to the FDA in two separate, unannounced inspections within a period of 5 months that it was, in fact, in full compliance. (*Id.*) The FDA did not provide any evidence in its letter that showed that Raw Farm's food safety plan was not in compliance with 21 U.S.C. 507. (*Id.*) Moreover, Raw Farm referred to the June 5, 2019 FDA Environmental Results, which detected no pathogens in its processing plants or finished products. (McAfee Decl. at ¶ 18) Nevertheless, in recognition of the FDA directive to cease distribution of its Pet Food Product outside of California, Raw Farm willingly complied. (*Id.*)

In the same letter, Raw Farm further reminded the FDA that the CDFA inspects its processing plant quarterly; CDFA collects finished product samples monthly; and CDFA acts as an agent of the FDA when administering its regular Food Safety Modernization Act ("FSMA") inspections. (McAfee Decl. at ¶ 19) Moreover, Raw Farm also repeated its inability to type the entire Paragraph 2(f) Statement on its receipts given that its sales system computer software did not permit additional text to be added to the receipts, and reiterated its attempts to modify the software. (*Id.*) Still, in a further effort to comply, Raw Farm informed the FDA that, at great expense, it had ordered customized stamps for use by every driver to stamp each and every invoice by hand. (*Id.*)

Raw Farm additionally pointed out that the FDA's untimely denial of its May 24, 2019 request to ship its raw milk out of state for study, research and testing was unreasonable. (McAfee Decl. at ¶ 20) In comparison, Raw Farm was required to respond within 15 business days. (*Id.*)

1    Despite this disparity, Raw Farm immediately complied. (*Id.*)

2            Finally, still in the same letter, Raw Farm informed the FDA that it was currently undergoing

3    an inspection by FDA investigators beginning September 23, 2019. (McAfee Decl. at ¶ 21) Raw

4    Farm welcomed the unannounced inspection and desired to continue to work with the FDA. Raw

5    Farm repeated its request for approval for its Pet Food Product. (*Id.*)

6            On September 26, 2019, Raw Farm sent another letter to the FDA to formally renew its

7    request for approval to distribute its Pet Food Product. (McAfee Decl. at ¶ 22) In support, Raw

8    Farm expressed its current efforts to demonstrate to the FDA inspectors, who arrived on September

9    23, 2019, that Raw Farm was in full compliance with 21 C.F.R. 507 Subpart C with regard to its

10   food safety plan. (*Id.*) Raw Farm further reiterated that laboratory tests conducted had detected no

11   pathogens;[7] reiterated that its Pet Food Product was intended only for cats and dogs; and reiterated

12   that its labels were fully AAFCO compliant. (*Id.*)

13           During the September 23, 2019 inspection (which continued through October 9, 2019) the

14   FDA thoroughly inspected Raw Farm's food safety systems and processing plant. (McAfee Decl.

15   at ¶ 23) It issued a Form 483 Warning Letter on October 9, 2019, outlining alleged deficiencies.

16   (*Id.*) Of paramount importance, once again, no pathogens were detected. (*Id.*)

17           On October 28, 2019, Raw Farm sent a letter to the FDA outlining its continued efforts to

18   comply, and stating its affirmative and immediate steps taken to rectify alleged violations. (McAfee

19   Decl. at ¶ 24) Raw Farm confirmed that it had ceased all manufacture and sale of its Pet Food

20   Product since the inspection began on September 23, 2019, and referred again to its formal request

21   for approval, sent on September 26, 2019. (*Id.*) Raw Farm additionally outlined the many costly

22   steps it had taken to comply with the disclosure statement requirement, including: 1) adding the

23   Paragraph 2(f) Statement to the email signature line of all Accounts Receivable staff's emails, so

24   that it automatically sent out with every email; 2) ordering numerous stamps with the entire

25   Paragraph 2(f) Statement on it, and, 3) distributing the stamps to all staff and training each of them

26

27

28   [7] Raw Farm attached as an exhibit to its letter the May 30, 2019 environmental studies report, wherein no
     pathogens were detected.

- 8 -

to stamp each invoice by hand with the required Paragraph 2(f) Statement. (*Id.*) Further, Raw Farm confirmed that notice had been provided to all commercial buyers above 2% of sales. (*Id.*)

In addition, Raw Farm confirmed its removal of certain content on its website and social media platforms, and acknowledged and apologized for any confusion caused. (McAfee Decl. at ¶ 25) Furthermore, Raw Farm confirmed its directive to its marketing staff, led by Kaleigh Lutz, to remove and cease "sharing" posts containing medical claims or health benefits related to raw milk. (*Id.*; *See also* Declaration of Kaleigh Lutz in Support of Opposition to Plaintiff's Motion to Reopen Case and Petition for an Order to Show Cause ("Lutz Decl.")).

On December 17, 2019, nearly three months after Raw Farm reissued its formal request on September 26, 2019, the FDA responded and **granted approval to Raw Farm to manufacture and distribute Pet Food Product interstate**. (McAfee Decl. at ¶ 26) The letter further stated that the FDA would respond separately to Raw Farm's September 25, 2019 and October 28, 2019, correspondence. **The FDA did not respond for nearly five months**. (*Id.*)

On February 24, 2020, the FDA responded to the aforementioned letters, and informed Raw Farm of additional alleged deficiencies. (McAfee Decl. at ¶ 27) FDA demanded that, within 15 business days, Raw Farm provide sample copies of their emails and invoices to ensure compliance with the required Paragraph 2(f) Statement. (*Id.*) FDA also backtracked on its enforcement of 21 C.F.R. 507 Subpart C, and confirmed that compliance with this section was not assessed during the September 23 – October 9, 2019 inspection, because the FDA obtained information that Raw Farm may qualify for exemptions as a "very small business" pursuant to 21 C.F.R. 507.3[8] and 21 C.F.R. 507.5(d).[9] (*Id.*) The FDA further acknowledged that Raw Farm submitted an attestation as such a qualified facility on October 9, 2019. (*Id.*) FDA further requested that Raw Farm provide proof that it had sent a copy of the 2010 Order to the required individuals to whom it had not already been

_____

[8] 21 C.F.R. 507.3 defines "very small business" as "…a business (including any subsidiaries and affiliates) averaging less than $2,500,000, adjusted for inflation, per year, during the 3-year period preceding the applicable calendar year in sales of animal food plus the market value of animal food manufactured, processed, packed, or held without sale (*e.g.,* held for a fee or supplied to a farm without sale)."
[9] 21 C.F.R. 507.5(d) provides exemptions for qualified facilities, such as "very small businesses" as defined in 21 C.F.R. 507.3.

1    provided. (*Id.*)

2         In full compliance, on February 27, 2020, Raw Farm addressed the alleged deficiencies and

3    provided the sample emails, invoices, notifications to distributors, and proof of sending the 2010

4    Order, as requested. (McAfee Decl. at ¶ 28) Raw Farm further stated that it had made the capital

5    investment to move to a better sales software system, which would permit the ability to add the

6    statement directly to the invoices, rather than handstamp them. (*Id.*)

7         On March 31, 2020, *after having received permission to manufacture and ship interstate its*

8    *raw pet food and raw cheddar cheese, for the third time*, Raw Farm made a separate request to the

9    FDA for emergency interstate permission to ship raw dairy products outside of California in

10   response to the recent COVID-19 Pandemic. On April 3, 2020, the FDA denied this request.

11   (McAfee Decl. at ¶ 29)

12        On December 4, 2020, Raw Farm notified the FDA of its intent to formally change its

13   business name to "Raw Farm," and submitted a copy of the new label, containing the new business

14   name, for pre-approval and requested that the FDA advise of any feedback. (McAfee Decl. at ¶ 31)

15   **The FDA did not respond for nearly three months**. (*Id.*)

16        On March 15, 2021, the FDA responded to Raw Farm's request for pre-approval as to the

17   label, confirming that it was compliant with the requirements of federal labeling regulations

18   pursuant to 21 C.F.R. 501.[10] (McAfee Decl. at ¶ 32)

19        On November 5, 2021, Raw Farm informed the FDA that, on October 13, 2021, it officially

20   changed its name with the Secretary of State from "Organic Pastures Dairy Company, LLC" to

21   "Raw Farm, LLC." (McAfee Decl. at ¶ 33) Raw Farm also sought clarification from the FDA as to

22   transportation of raw dairy products pursuant to C.F.R. 1240.61. (*Id.*)

23        On December 7, 2021, the FDA responded and stated that Raw Farm was required to notify

24   the FDA of the name change 15 days in advance, and requested that Raw Farm comply in the future.

25   (McAfee Decl. at ¶ 34) The FDA also clarified that it could not answer the other inquiry without

26

27
───────────────────────

28   [10] The provisions of 21 C.F.R. 501 govern animal food labeling.

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

1   further information. (*Id.*)

2        Between December 29, 2021 and July 29, 2022, Raw Farm engaged in separate

3   correspondence with the FDA unrelated to their compliance with the 2010 Order. (McAfee Decl.

4   at ¶ 35) Such correspondence was regarding clarification of FDA regulations, including the

5   transportation of raw dairy products pursuant to C.F.R. 1240.61, and requests for special

6   permissions to ship free products interstate and to ship samples interstate for research and testing.

7   (*Id.*) Raw Farm's requests for additional permissions regarding the interstate shipment of its raw

8   dairy products were denied. (*Id.*) **Of paramount importance, however, is the fact that Raw**

9   **Farm's permissions to manufacture and ship interstate its Pet Food Product and Cheese**

10  **Product was not revoked**. (*Id.*)

11       On March 6, 2022, Raw Farm notified the FDA that it had moved its processing plant to a

12  new location at 128 N. 9th Street, Fowler, CA 93625, because the previous processing plant, located

13  at 7221 S. Jameson Avenue, Fresno, CA 93706, burned down on January 2, 2022, and was no

14  longer in existence. (McAfee Decl. at ¶ 38) Police investigation confirmed the cause of the fire to

15  be arson. Raw Farm was not able to notify the FDA any sooner than March 6, 2022, because the

16  fire destroyed all of its creamery equipment, some vehicles, and tractors, and the structure burned

17  to the ground. (McAfee Decl. at ¶ 36-41) Moreover, Raw Farm had to locate a new processing plant

18  out of which it could resume operations. This chaotic and traumatic event and its aftermath

19  reasonably prevented them from accessing their email accounts during this time. (*Id.*) Nevertheless,

20  Raw Farm notified the FDA of its new location as promptly as possible. (*Id.*)

21       The Paragraph 2(f) statement is plainly visible on all required documents, including packing

22  slips and invoices; at its primary sales venue; on its website and all of its social media platforms;

23  and in pertinent email correspondence. (McAfee Decl. at ¶ 48) The FDA has not notified Raw Farm

24  of any issues pertaining to this statement since its letter on February 24, 2020, which Raw Farm

25  immediately responded to and addressed on February 27, 2020. (*Id.*) Likewise, prior to the filing of

26  this Motion, the FDA did not notify Raw Farm of any non-compliant website or social media posts

27  still in existence. (McAfee Decl. at ¶¶ 54 and 64)

28       Raw Farm estimates that it has incurred approximately $289,380.01 in additional business

- 11 -

expenses to hire and train a new marketing team to monitor all website, blog, and social media posts

so that they remain in compliance with the 2010 Order, and to invest in a new processing system to

comply with the Paragraph 2(f) statement. (McAfee Decl. at ¶¶ 54-57) As soon as Raw Farm is

notified of non-compliant content, it is immediately removed. (*Id.*) Raw Farm has also suffered

incalculable financial losses from its inability to manufacture and sell its Pet Food Product and

Cheese Product due to inefficiencies, inconsistencies and delays on the part of the FDA. (*Id.*)

## IV. <u>PRIOR MEET AND CONFERS BETWEEN COUNSEL</u>

Nearly one year ago, Attorney Robin Ratner ("Ms. Ratner"), counsel for Raw Farm,

received an initial communication from Mr. Roger Gural ("Mr. Gural"), Senior Attorney for the

U.S. DOJ regarding Raw Farm and the 2010 Order. (Declaration of Robin B. Ratner in Support of

Opposition to Plaintiff's Motion to Reopen Case and Petition for an Order to Show Cause ("Ratner

Decl.") at ¶ 2). The letter, dated March 31, 2022 and received on April 5, 2022, concerned Raw

Farm's alleged violations of the 2010 Order, and mandatory notification for approval, *vis-a-vis* the

2010 Order, to manufacture the two items at issue in this Motion, i) Kefir Raw Pet Food; and ii)

Raw Cheddar Cheese. (*Id.*) Approval was not required by FDA regulations but required by the *13-*

*year-old Contempt Order -the 2010 Order.* (*Id.*)

Beginning April 13, 2022, through May 27, 2022, Mr. Gural and Ms. Ratner continued to

negotiate changes to the 2010 Order in keeping more in line with the current FDA regulations, as

several restrictions were severely outdated, and including specific discussions about a sunset

provision to help defray the unnecessary punitive provisions. (Ratner Decl. at ¶¶ 3-7)

On July 14, 2022, Mr. Gural responded to the May 27, 2022 letter and stated the following:

> "Dear Counsel, Thank you very much for your proposed
> edits. Please find attached our proposed edits in response.
> We have made significant concessions in this draft: **(1) we
> are no longer asking for any restrictions on sales of raw
> milk products pending the review by an outside labeling
> expert; (2) we are no longer asking for your clients to
> cover the costs of inspections, only costs due to any
> corrective action needed; and (3) we have added, at your
> request, a sunset clause."**

(Ratner Decl. at ¶ 8)

On August 2, 2022, following Raw Farm's review of the DOJ's proposed modifications, Ms. Ratner responded to Mr. Gural, advising him of the reasons why the proposed changes, while appreciated, would have worked if additional burdens were not included. (Ratner Decl. at ¶ 9). The same day, Mr. Gural wrote that he received the letter and would respond the following week. (Ratner Decl. at ¶ 10-11)

Ms. Ratner did not receive a response from Mr. Gural, or anyone in his department, until she received a copy of the instant Motion on about March 29, 2023—**nine months later**. (*Id.*) Rather than continue good faith meet and confer efforts, the DOJ instead filed the instant lawsuit.

## V.       LEGAL STANDARD FOR CIVIL CONTEMPT

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." (*Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693,695 (9th Cir. 1993)). The moving party has the burden of showing by clear and convincing evidence that the [non-moving party] violated a specific and definite order of the court. (*Stone v. City and County of San Francisco,* 968 F.2d 850, 856 n. 9 (9th Cir.1992), citing *Balla v. Idaho St. Bd. of Corrections,* 869 F.2d 461, 466 (9th Cir. 1989); *See also Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) [the party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by "clear and convincing evidence," not merely a preponderance of the evidence]).

"The contempt need not be willful." (*In re Dual-Deck Video Cassette Recorder Antitrust Litig.* 10 F.3d at 695). Contempt sanctions, however, are not warranted where the nonmoving party's action "appears to be based on a good faith and reasonable interpretation" of the court's order. (*Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d at 891 (citing *Rinehart v. Brewer,* 483 F.Supp. 165, 171 (S.D. Iowa 1980)). "Substantial compliance" with the court order is a defense to civil contempt, and is not vitiated by "a few technical violations" where every reasonable effort has been made to comply. (*Id.*). The Ninth Circuit's rule with regard to contempt has long been whether the defendants have performed "all reasonable steps within their power to insure compliance" with the court's orders. (*Sekaquaptewa v. MacDonald,* 544 F.2d 396, 404 (9th

Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977)). If a violating party has taken "all reasonable steps" to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt. (*Vertex, supra* at 891-892).

A civil contempt proceeding is criminal in nature because of the penalties that may be imposed. (*Raiden v. Superior Court* (1949) 34 Cal.2d 83, 206 P.2d 1081). Alleged contemnors are entitled to most constitutional rights guaranteed to all criminally accused persons. (*In re Martin* (1977) 71 Cal.App.3d 472, 139 Cal.Rptr. 451). The findings and judgment in a contempt proceeding are strictly construed to favor the accused. (*Hotaling v. Superior Court* (1923) 191 Cal. 501, 506, 217 P. 73, 29 A.L.R. 127, citing *Schwarz v. Superior Court* (1923) 111 Cal. 106, 43 P. 580).

Moreover, where compliance is impossible, neither the moving party nor the Court has any reason to proceed with a civil contempt action. (*F.T.C. v. Affordable Media* 179 F.3d 1228, 1240 (9th Cir. 1999).

The evidence presented in the DOJ's accompanying declarations, the Opposition to the Motion, and accompanying declarations all support by a clear and convincing that the Motion is frivolous and should be denied outright.

## VI.   **ARGUMENT**

### a.   **The Instant Motion to Hold Non-Party Aaron McAfee in Contempt Constitutes a Violation of his Due Process Rights**

The Fourteenth Amendment of the United States Constitution provides as follows:

> "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The instant Motion on behalf of the FDA to hold Non-Party Aaron McAfee in contempt of the 2010 Order constitutes a violation of his due process rights. (McAfee Decl. at ¶ 2) Aaron McAfee had no notice of the 2010 Order, nor of the filing of the instant Motion. (*Id.*) Further, Aaron McAfee was not a party to the lawsuit which culminated in the 2010 Order. (*Id.*) He was in school

- 14 -

and not managing the family farm. (*Id.*) Aaron McAfee cannot be held liable for violating the 2010 Order unless he had the opportunity to oppose the Order and defend himself prior to the Court's ruling. (*Id.*) Accordingly, the Court should deny Plaintiff's Motion as to Non-Party Aaron McAfee.

### b. A Finding of Civil Contempt is Unwarranted because Raw Farm has Taken All Reasonable Steps to Comply in Good Faith

California courts have long refused to award contempt sanctions against an alleged contemnor where the alleged contemnor's action "appears to be based on a good faith and reasonable interpretation" of the court's order. (*Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d at 891 (citing *Rinehart v. Brewer,* 483 F.Supp. 165, 171 (S.D. Iowa 1980)). In *Vertex,* the Court held that the district court did not abuse its discretion in declining to hold defendants in civil contempt because they were in substantial compliance with the consent judgment. (*Id.* at 892). Here, a finding of civil contempt in this case similarly both unwarranted and unjustified.

The facts of this case indisputably show that Raw Farm has taken all reasonable steps to comply in good faith with the 2010 Order. (*See* McAfee Decl. at ¶¶ 3-69). As discussed at length above, and in the Declaration of Aaron McAfee served concurrently herewith, Raw Farm has maintained near constant communication with the FDA since April 23, 2019. It has willingly and transparently submitted to multiple unannounced FDA inspections and testing of its facilities, and each time has proudly maintained clean, safe, and compliant manufacturing facilities and products. Each and every time the FDA notified Raw Farm of any alleged deficiencies, Raw Farm took immediate corrective action, and continually expressed its willingness to comply. (*See* McAfee Decl. at ¶¶ 3-69). In fact, Raw Farm has gone to extreme and costly lengths to maintain compliance with the 2010 Order, including investing in entirely new sales software to accommodate the required Paragraph 2(f) Statement, and hiring and training a marketing team to ensure its website, blogs and social media content are compliant. (*Id.*)

### i. Raw Farm has FDA Approval to Distribute its Raw Cheddar Cheese in Interstate Commerce

As part of its good faith efforts to comply with the 2010 Order, Raw Farm has long held FDA approval for its Cheese Product. (*See* McAfee Decl. at ¶ 16) Raw Farm cannot be held in

1  contempt of a court order with which it has complied. The FDA granted Raw Farm approval to

2  manufacture and distribute its Cheese Product interstate *four years ago* on September 6, 2019.

3  Moreover, in granting the approval, the FDA has conceded that the Cheese Product is compliant

4  with the 2010 Order. Thus, this issue is moot.

5          **ii.     Raw Farm has FDA Approval to Distribute its Raw Kefir Pet Food Product**

6                  **in Interstate Commerce**

7          Likewise, Raw Farm has long held FDA approval for its Pet Food Product. (*See* McAfee

8  Decl. at ¶ 26) Again, Raw Farm cannot be held in contempt of a court order with which it has

9  complied. Raw Farm has maintained FDA approval to manufacture and distribute its raw kefir pet

10  food product interstate since December 17, 2019. In granting the approval *four years ago*, the FDA

11  has conceded that the Pet Food Product is compliant with the 2010 Order. Even more recently, on

12  March 15, 2021, the FDA approved Raw Farm's revised labeling following the name change of its

13  business. (*See* McAfee Decl. at ¶ 32) Thus, this issue is also moot.

14          **iii.    Defendants have Affixed the Required Statements Pursuant to Paragraph**

15                  **2(f) of the Court's 2010 Order**

16          As discussed at length above, Raw Farm has taken painstaking and costly efforts to ensure

17  that it has complied with Paragraph 2(f) of the 2010 Order. (*See* McAfee Decl. at ¶¶ 48-55) First,

18  Raw Farm was unable to comply due to impossibility—as Raw Farm informed the FDA, its sales

19  software was unable to accommodate the lengthy required statement. (*See* McAfee Decl. at ¶¶ 12-

20  13, 19). Still, it took whatever actions within its power to comply. In addition to including the

21  statement on its retail packing slips, primary sales venue, and website homepage, Raw Farm added

22  the statement to the email signature lines of all Accounts Receivable staff's emails, so that the

23  Paragraph 2(f) Statement was automatically sent out with every email. Raw Farm also

24  commissioned numerous customized stamps of the entire statement, and trained its staff to hand

25  stamp each and every invoice one by one. (*Id.*). Then, despite an expense of nearly $300,000, Raw

26  Farm invested in entirely new sales software which would permit the entire statement to be printed

27  more efficiently. (*See* McAfee Decl. at ¶¶ 28, 55-56). The required Paragraph 2(f) Statement is

28  plainly visible on all required documents, including packing slips and invoices; at its primary sales

1  venue; on its website and all of its social media platforms; and in pertinent email correspondence.

2  (*See* McAfee Decl. at ¶¶ 12-13, 19). The FDA has not notified Raw Farm of any issues pertaining

3  to this statement since its letter on February 24, 2020, which Raw Farm immediately responded to

4  and addressed on February 27, 2020. (*See* McAfee Decl. at ¶ 48). This is simply because Raw Farm

5  has taken all reasonable steps in good faith to comply. Thus, this issue is also moot.

6          iv.     **Any Alleged Violations of the 2010 Order were not Willful, and Raw Farm**

7                  **took Immediate Steps to Rectify Any Alleged Violations**

8        The Ninth Circuit has held that "substantial compliance" with a court order is not vitiated

9  by "a few technical violations" where every reasonable effort has been made to comply. (*See Vertex,*

10  *supra* at 891). A similar logic should be applied here. The facts indisputably show that, at every

11  turn, Raw Farm has taken every reasonable step, and indeed has gone to great lengths, to comply

12  in good faith with the 2010 Order. (*See* McAfee Decl. at ¶¶ 3-69) Any alleged violations of the

13  2010 Order were not willful. In fact, the voluminous correspondence between the FDA and Raw

14  Farm within the past four years indicates only Raw Farm's willingness to learn and improve

15  wherever possible. (*Id.*) Though the FDA sometimes took months, or even years, to notify Raw

16  Farm of deficiencies, Raw Farm consistently responded with swift and immediate action. (*Id.*)

17        It is telling that, in its moving papers, the FDA relies solely on outdated "evidence" of

18  wrongdoing. For instance, the social media posts to which the FDA refers are fossils from years

19  ago which Raw Farm was unaware were still accessible. (Lutz. Decl. at ¶¶ 3-4, 7-11) The FDA did

20  not notify Raw Farm of any non-compliant posts still in existence, and thus Raw Farm could not

21  correct them. (*See* McAfee Decl. at ¶ 48). The posts have since been deleted, with Raw Farm giving

22  additional direction and training to its marketing staff to ensure further improvement. (*See* McAfee

23  Decl. at ¶ 25; *See also* Lutz Decl. at ¶ 2). The fact that there were a few remaining posts is nothing

24  more than a "technical violation" due to human error, rather than malicious disobedience. (Lutz

25  Decl. at ¶¶ 7-8). And, true to form, these posts no longer exist. Such minor infractions, and

26  corresponding corrective actions, do not support a finding of civil contempt.

27          v.     **Any Alleged Non-Compliance was Due to Impossibility, Not Disobedience**

28        Where compliance is impossible, neither the moving party nor the Court has any reason to

proceed with a civil contempt action. (*F.T.C. v. Affordable Media,* 179 F.3d 1228, 1240 (9th Cir. 1999). As stated throughout, there have been times at which Raw Farm was unable to comply with the 2010 Order by mere fact of impossibility. For instance, it was impossible for Raw Farm to comply with the 2010 Order for FDA pre-market approval for the Pet Food Product because the FDA did not offer such approval. (*See* McAfee Decl. at ¶ 10). Nevertheless, after numerous efforts, Raw Farm obtained approval. (*See* McAfee Decl. at ¶ 26).

It was also impossible at first for Raw Farm to fully comply with the labeling requirements set forth in Paragraph 2(f) given that its sales system computer software did not permit additional text to be added to the receipts, which were generated by the system directly. (*See* McAfee Decl. at ¶¶ 12-13, 19). Nevertheless, Raw Farm utilized custom handstamps and, eventually, entirely new software to resolve this problem. (*See* McAfee Decl. at ¶¶ 28, 55-56). Likewise, it was impossible for Raw Farm to notify the FDA of its new processing plant location any sooner than March 6, 2022, because the old processing plant location burned down due to arson. (*See* McAfee Decl. at ¶¶ 37-40). During this time, operations ceased. (*Id.*)

**c. The FDA has Previously Determined that Raw Farm's Raw Cheddar Cheese is a Food Product Pursuant to Title 21, Part 133, Not a "Drug" as Defined by FDCA Section 321(g)(1)**

The FDA defines "food" as "articles used for food or drink for man or other animals." (*See* Food, Drug and Cosmetic Act ¶201(f); *See also* 21 U.S.C. § 117.3). The FDA defines "cheddar cheese" as follows:

> Cheddar cheese is the food prepared by the procedure set forth in paragraph (a)(3) of this section.... The minimum milkfat content is 50 percent by weight of the solids, and the maximum moisture content is 39 percent by weight.... **If the dairy ingredients used are not pasteurized, the cheese is cured at a temperature of not less than 35 deg.F for at least 60 days**.

21 C.F.R. § 133(a)(1) (emphasis added); *See also* 21 C.F.R. § 133(c) ("the name of the food

is 'cheddar cheese.'")[11]

The FDA permits an exception to the mandatory pasteurization of milk products pursuant to 21 C.F.R. § 1240.61:

> "No person shall cause to be delivered into interstate commerce or shall sell, otherwise distribute, or hold for sale or other distribution after shipment in interstate commerce any milk or milk product in final package form for direct human consumption…**except where alternative procedures to pasteurization are provided for by regulation, such as in part 133 of this chapter for curing certain cheese varieties**."

21 C.F.R. § 1240.61 (emphasis added).

In contrast, the Federal Food, Drug and Cosmetic Act (FDCA) defines a "drug" as follows:

> (A) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C).

FDCA § 201(g)(1).

The FDA clearly intended for "cheddar cheese" to be considered a food product intended for consumption by humans. Here, the product at issue is Raw Farm's raw cheddar cheese product, which falls squarely within the definition of "cheddar cheese" pursuant to 21 C.F.R. § 133 and is manufactured in accordance with 21 C.F.R. § 1240.61. At no time has either the FDA or Raw Farm considered its raw cheddar cheese product to be a "drug." In fact, this Motion is the first

---

[11] The FDA further outlines the manner in which cheddar cheese may be processed, including through use of hydrogen peroxide/clotting enzymes, and how the curd may be treated as the cheese forms. (*See* 21 C.F.R. § 314(a)(3)). Importantly, the FDA specifies that certain "safe and suitable ingredients may be used" to create cheddar cheese, including "milk, nonfat milk, or cream…rennet and/or other clotting enzymes of animal, plant, or microbial origin…[and/or] coloring." (21 C.F.R. § 314(b)(1) – (3)).

1   attempt by any party—including the FDA—to characterize the cheese product as a drug. (*See* Lutz

2   Decl. at ¶ 6). Raw Farm's only business is dairy.

3       **d.   Raw Farm Never Intended for its Raw Cheddar Cheese Product to be Considered**

4           **a Drug**

5       Relatedly, Raw Farm never intended for its Cheese Product to be considered a drug. Plaintiff

6   takes tremendous liberties to attempt to characterize Raw Farm's cheese as a drug, as part of its

7   baseless enforcement action. However, Plaintiff fails to acknowledge the fact that the FDA itself

8   issued approval to Raw Farm to manufacture and distribute its raw cheddar cheese product interstate

9   on September 6, 2019—as a food product. (McAfee Decl. at ¶ 16). At no point during the process

10  of seeking FDA approval did Raw Farm present any intention to consider its cheddar cheese a drug.

11  In fact, in granting approval, the FDA quoted specific language from 21 C.F.R. § 133—a section

12  of the Code of Federal Regulations which governs "**Cheese and Related Cheese Products**"—by

13  stating that the approval was for "aged cheddar cheese that is cured at a temperature of not less than

14  35 [degrees Fahrenheit] for at least 60 days."

15      Plaintiff further improperly attempts to mislead the Court by implying that since-deleted

16  social media and blog posts show Raw Farm's intention to consider its Cheese Product a "drug." In

17  reality, this was never Raw Farm's intention in any aspect of its manufacturing, labeling or

18  advertising of the Cheese Product. (Lutz Decl. at ¶ 6) In the past, like thousands of companies

19  across the United States, Raw Farm has publicly expressed its beliefs as to the health benefits of

20  raw cheddar cheese on its blog and social media sites. However, upon notification that such

21  statements ran afoul of state and federal regulations, Raw Farm took immediate action to remove

22  such statements. (Lutz Decl. at ¶¶ 2, 6-7, 11). The remaining posts to which Plaintiff refers only

23  remained due to good faith error, and have since been removed and are no longer accessible. (*Id.*)

24  In fact, their immediate removal is further demonstrative that Raw Farm only ever intended its

25  Cheese Product for human consumption as food.

26      Moreover, a product is not a drug simply because it makes a truthful and non-misleading

27  health statement. Title 21 U.S.C. section 321(g)(1) provides:

28

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

A food or dietary supplement for which a claim…is made in accordance with the requirements of section 343(r) of this title is not a drug solely because the label or the labeling contains such a claim. A food, dietary ingredient, or dietary supplement for which a truthful and not misleading statement is made in accordance with section 343(r)(6) of this title is not a drug under clause (C) solely because the label or the labeling contains such a statement.

21 U.S.C. 321(g)(1).

In its advertising through its website and social media, Raw Farm has made truthful and non-misleading statements regarding the health benefits of its cheddar cheese. Raw Farm's ability to do so is not prohibited by the 2010 Order, nor by FDA labeling guidelines, with which it complies. Attempts to mislead the Court otherwise should be disregarded.

   i.   **Raw Farms' Raw Cheddar Cheese is Not an Unapproved New Drug, and Raw Farm has Never Sought FDA Approval for its Raw Cheddar Cheese as a New Drug**

New drugs are regulated and controlled by the FDA's New Drug Application ("NDA"). (*See* United States Food and Drug Administration, *New Drug Application (NDA)*, January 21, 2022, available at: https://www.fda.gov/drugs/types-applications/new-drug-application-nda). The NDA document is the vehicle through which drug sponsors formally propose that the FDA approve a new pharmaceutical for sale and marketing in the U.S. (*Id.*) Documents required in an NDA "tell the drug's whole story, including what happened during the clinical tests, what the ingredients of the drug are, the results of the animal studies, how the drug behaves in the body, and how it is manufactured, processed and packaged." (*Id.; See also* 21 C.F.R. § 314).

Raw Farm has never sought approval from any agency to manufacture or distribute its Cheese Product as a drug, and has never submitted an NDA document for its Cheese Product. The FDA has already recognized Raw Farm's cheddar cheese as a legitimate food product by issuing approval to Raw Farm four years ago. Plaintiff's flimsy attempt to now mischaracterize Raw Farm's cheddar cheese serves only to waste valuable judicial time and resources and, frankly, to baffle the mind.

///

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

**e.   The Relief Requested by Plaintiff is Egregious, Excessive, and Unwarranted**

Plaintiff has asked the Court to strengthen an already Draconian and outdated order, but courts have long held that the findings and judgment in a contempt proceeding are strictly construed to favor the accused. (*Hotaling v. Superior Court, 191 Cal. 501, 506, 217 P. 73, 29 A.L.R. 127*, citing *Schwarz v. Superior Court*, 111 Cal. 106, 43 P. 580). Accordingly, the Court must view all evidence in favor of Raw Farm. The extensive evidence set forth in this Opposition and supporting declarations clearly and convincingly demonstrate that Raw Farm was proactive in all correspondence with the FDA, and immediately complied to correct all directives as instructed. To order additional protocols as requested by Plaintiff would be an absolute abuse of judicial discretion.

The relief requested by Plaintiff is egregious, excessive, unwarranted, and, perhaps worst of all, based on no actual threat to or legitimate concern for public health and safety. Plaintiff seeks only to punish Raw Farm for its good faith production of raw food products. It is well established that the FDA has a particular distain toward raw dairy products, and such bias is evidently clouding their view of the facts in this case. (*See* McAfee Decl. at ¶ 47, Exhibit 22) Moreover, it is telling that, during a global pandemic and worldwide inflationary period, the FDA has targeted this small family business under the guise of regulating an "unapproved new drug." This is simply not a case about an "unapproved new drug"—it is a case about cheese. As discussed at length, Raw Farm has taken all reasonable steps to comply in good faith in producing its **food** product with compliant labeling, including taking extensive measures to affix the required Paragraph 2(f) statement pursuant to the 2010 Order. (*See* McAfee Decl. at ¶ 13, 19, 24, 27, 48). Raw Farm has, and continues to, report its compliance with all state and federal regulations, and the 2010 Order. Raw Farm is also inspected bimonthly by the CDPH and CDFA, and submits to numerous unannounced FDA inspections per year. (*See* McAfee Decl. at ¶ 49-50). Compliance simply does not need to be further induced by the Court in any manner.

Plaintiff attempts to sway the Court through citation to case law which is simply inapplicable and easily distinguished from the instant case. First, Raw Farm reiterates that this is not an issue of an "unapproved new drug." Plaintiff cites to only *one* unpublished California slip copy judicial order in support of its requested relief on the grounds that Raw Farm is distributing

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

an "unapproved new drug": *United States v. Innovative BioDefense, Inc.,* No. 8:18 CV 996-DOC (JDE), 2020 WL 5809943 (C.D. Cal. May 4, 2020). While Plaintiff did not cite to an actual case, the underlying facts of the order in *BioDefense* involve a small business which marketed a line of topical antiseptic hand hygiene products which made various marketing claims about its ability to fight against the spread of ebola. This case is easily distinguishable from the instant facts, given that the products at issue involve raw dairy products—specifically, the Cheese Product and Pet Food Product, both of which have already obtained FDA approval as food products for humans and animals, respectively. At no time has Raw Farm sought to market these products as a drug, nor has Raw Farm sought approval at any time from the FDA to classify them as drugs. Notably, the remainder of Plaintiff's cited authority is drawn from jurisdictions outside of the State of California, and are therefore neither binding nor instructive in this Court. Thus, all authority cited by Plaintiff in support of its request for relief on grounds that Raw Farm is distributing an "unapproved new drug" should be disregarded.[12]

Second, Plaintiff's reliance on cases in support of four "non-monetary civil contempt sanctions" are also easily distinguishable. None of these cases involve raw dairy farmers complying with state and federal regulations. In fact, none of the cited cases are even FDA enforcement actions; they are wholly irrelevant and non-instructive.[13] Moreover, Plaintiff again cites to authority drawn

_____

[12] In its Motion, Plaintiff cites to only one unpublished California slip copy judicial order in support of its requested relief: *United States v. Innovative BioDefense, Inc.,* No. 8:18 CV 996-DOC (JDE), 2020 WL 5809943 (C.D. Cal. May 4, 2020). The following cases were decided in jurisdictions outside of the judicial districts of the State of California: *United States v. Fusion Health & Vitality LLC,* Case No. 4:20-cv-296, 2021 WL 214982 (S.D. Ga. Jan. 8, 2021); *United States v. Genesis II Church of Health & Healing,* No. 20-21601-CIV-Williams, 2020 WL 4690217 (S.D. Fla. Aug. 3, 2020); *United States v. Cole,* No. 3:13-cv-01606-SI, 2015 WL 12670520 (D. Or. Feb. 5, 2015); *United States v. Vita-Erb, Ltd.,* No. 05-3494-CV-S-FJG, 2006 WL 3313941 (W.D. Mo. Nov. 14, 2006); *United States v. Syntrax Innovations, Inc.,* 149 F. Supp. 2d 880 (E.D. Mo. 2001); *United States v. Vital Health Prods., Ltd.,* 786 F. Supp. 761, 779-80 (E.D. Wis. 1992); *United States v. LeBeau,* 985 F.2d. 563, 779-80 (7th Cir. 1993).

[13] In its Motion, Plaintiff cites to *Parsons v. Ryan,* 949 F.3d 443, 455 (9th Cir. 2020) (enforcement action pertaining to class action brought by state prisoners against senior officials of Arizona Department of Corrections); *Garcia v. City of LA,* CV 19-6182 DSF (PLAx), 2020 WL 6586305 (C.D. Cal. Sept. 23, 2020) (order holding City of Los Angeles in civil contempt for failing to comply with preliminary injunction pertaining to the City's seizure of unhoused person's belongings); *Calvillo Manriquez v. Devos,* 411 F.Supp. 3d 535, 540 (N.D. Cal. 2019) (Secretary of Department of Education and Department of Education held in civil contempt of order preliminarily enjoining collection efforts under the Department's "Average Earnings

1 from a jurisdiction outside of the judicial districts of the State of California, which is therefore

2 neither binding nor instructive in this Court.[14] Again, all authority cited by Plaintiff in support of

3 its request for "non-monetary civil contempt sanctions" should be disregarded.

4       Third, Plaintiff's request for "conditional fines" is unfounded. As discussed throughout,

5 Plaintiff has taken every reasonable step to comply in good faith, and any alleged non-compliance

6 has been immediately resolved and corrected. Raw Farm has remained transparent to all inspections,

7 and has been adaptive to all directives by the CDPH, CDFA, and FDA to comply with applicable

8 state and federal regulations, and the Court Order. Moreover, it is simply inequitable to force Raw

9 Farm to pay any sort of fine when its enthusiastic requests for input by the FDA are met with months,

10 or even years, of silence.

11       Finally, the Court should outright reject Plaintiff's request that Raw Farm pay its attorney

12 fees, as this is a blatant abuse of the judicial system. In addition to its numerous and expensive

13 efforts to conform its actions to the mandates of the onerous 2010 Order, Raw Farm was in good

14 faith discussions with the FDA for months before the filing of this Motion. This Motion did not

15 need to be filed, nor did valuable time and judicial resources need to be wasted, especially during

16 a still-ongoing global pandemic. Any expenditure on behalf of Plaintiff, whether past, present, or

17 future, is due to their refusal to continue open and transparent discussions with Raw Farm. The

18 Court should outright refuse to force a small family business such as Raw Farm to bear the cost and

19 burden of Plaintiff's frivolous suit.

20 **VII.**   <u>**CONCLUSION**</u>

21       Raw Farm has taken all reasonable steps to comply in good faith. Each and every time Raw

22 Farm was notified of any alleged non-compliance, Raw Farm took immediate steps to rectify the

23 deficiencies. Any alleged failure to comply has been due to impossibility, or good faith human error.

24 As detailed above, and for the foregoing reasons, Raw Farm respectfully requests that this Court

25

26

27 Rule" in action brought by federal student loan borrowers); *Mannick v. Kaiser Found. Health Plan, Inc.,* No. C 03-5905 PJH, 2006 WL 3734390 (N.D. Cal. Dec. 18, 2006).

28 [14] *Trueblood v. Wash. State Dep't of Social & Health Servs.,* No. C14-1178-MJP, 2016 WL 3632486 (W.D. Wash. July 7, 2016).

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT

deny Plaintiff's Motion To Reopen Case And Petition For An Order To Show Cause Why Raw Farm, LLC f/k/a Organic Pastures Dairy Company, LLC; Mark McAfee; And Aaron McAfee Should Not Be Held In Civil Contempt.

Date: April 17, 2023                              STRUCTURE LAW GROUP, LLP


                                        By: _/s/Robin Ratner_____
                                              Robin B. Ratner, Esq.
                                              Attorneys for Attorneys for Defendants Raw
                                              Farm, LLC fka Organic Pastures Dairy
                                              Company, LLC; Mark McAfee; and Non-Party
                                              Aaron McAfee

OPPOSITION TO MOTION TO REOPEN CASE AND PETITION FOR AN OSC RE: CIVIL CONTEMPT