1  Mark R. Figueiredo, Esq. (SBN 178850)
   *mrf@structurelaw.com*
2  Christopher G. Addy, Esq. (SBN 256044)
   *caddy@structurelaw.com*
3  STRUCTURE LAW GROUP, LLP
4  1801 Century Park E. Suite 475
   Los Angeles, CA 90067
5  Telephone: (310) 818-7500
   Facsimile: (408) 441-7501
6

7  Attorneys for Defendants Raw Farm, LLC fka
   Organic Pastures Dairy Company, LLC; and
8  Mark McAfee

9

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE EASTERN DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,            CASE NO. 1:08-CV-01786-JLT-SAB

13              Plaintiff,               **OPPOSITION TO PLAINTIFF'S**
                                         **MOTION TO ENFORCE DECREE**
14      v.

15  ORGANIC PASTURES DAIRY COMPANY,      Date:    May 24, 2024
    LLC, a corporation, and MARK McAFEE, an  Time:  9:00 AM
16  individual,                         Dept.:   Courtroom 6, Fresno
                                         Judge:   Hon. Jennifer L. Thurston
17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................................... 2

    A. Procedural Background ........................................................................................ 2

    B. Substantive Background ....................................................................................... 3

III. LEGAL ANALYSIS AND ARGUMENT .............................................................. 11

    A. FDA's Requests Are Arbitrary And Capricious Because The Consent
       Decree Was For Labeling Issues And Not Cheese-Making They In
       Contravention Of The Law ................................................................................. 11

    B. FDA's Requests Are Arbitrary And Capricious Because They In
       Contravention Of The Law ................................................................................. 12

       1.  Raw Farm's Compliance With 21 CFR § 133.113(a) ............................... 12

       2.  The March 1 Letter Order offends the Administrative Procedure Act
          (APA) ......................................................................................................... 15

       3.  Intrastate Sale Of Milk Is Exclusively for The State Of California To
          Regulate ..................................................................................................... 17

    C. Raw Farm's Voluntary Testing And Willingness To Work With FDA In
       Crafting Appropriate Legislation ...................................................................... 18

IV. CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Auer v. Robbins*, 519 U.S. 452 (1997) ....................................................................... 11, 16

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  468 U.S. 837 (1984) ................................................................................................ 16

*Erie Boulevard Hydropower, LP v. Fed. Energy Regulatory
  Comm'n*, 878 F.3d 258 (D.C. Cir. 2017) ............................................................... 11

*Koshman v. Vilsack*, 865 F.Supp.2d 1083 (E.D. Cal., 2012) .................................... 16

*Panhandle Eastern Pipe Line Co. v. FERC*, 613 F.2d 1120 (D.C. Cir. 1979) ........... 16

*Stinson v. United States*, 508 U.S. 36 (1993) ........................................................... 16

*U.S. Lines, Inc. v. Fed. Mar. Comm'n*, 584 F.2d 519 (D.C. Cir. 1978) ...................... 16

## Statutes

18 CFR § 154.38(d)(4) ............................................................................................... 16

21 CFR § 1240.61 ................................................................................................ 8, 12

21 USC § 1240.61 ............................................................................................... 10, 13

21 USC § 133.113 ..................................................................................................... 13

21 USC § 133.113(a) ........................................................................................ 11, 12, 13

21 USC § 331(a) .................................................................................................... 2, 17

21 USC § 331(d) ......................................................................................................... 2

21 USC § 331(k) ....................................................................................................... 17

21 USC § 342 ........................................................................................................... 12

21 USC § 350l ........................................................................................................... 12

5 USC § 706(2)(A) ................................................................................................ 11, 17

5 USC § 706(2)(C) ................................................................................................ 15, 17

5 USC. § 706(2) ........................................................................................................ 15

## Other Authorities

Detection and Enumeration of Four Foodborne Pathogens in Raw Commingled
  Silo Milk in the United States; Journal of Food Protection, Vol. 75, No. 8, 2012 ..................... 10

OPPOSITION TO MOTION TO ENFORCE DECREE

## I.    INTRODUCTION

Defendants Raw Farm, LLC, formerly known as Organic Pastures Dairy Company, LLC, ("Raw Farm") and Mark McAfee (collectively, "Defendants") hereby oppose Plaintiff United States of America's ("Plaintiff") Motion To Enforce Consent Decree ("Motion"). Raw Farm proudly and legally operates a "raw" dairy, selling raw milk within the State of California under the California Department of Food and Agriculture ("CDFA") authority adhering to California Food and Agriculture Codes and by selling its raw cheeses across state lines as properly cured 60-day aged cheeses adhering to Food and Drug Administration ("FDA") codes and statutes.

At the heart of this motion is whether the milk used to make Raw Farm's cheese can be cured for 60 days as provided by FDA regulation, or whether it must be pasteurized. The regulations clearly allow curing for 60 days. But the FDA is taking the position with respect to Raw Farm only, that Raw Farm cannot make cheese using the 60-day curing provision. The FDA has not expressly said that, because the law is clearly in Raw Farm's favor on this point. But that is the net effect of what this dispute is about. The FDA defined "Affected Raw Milk" and then re-defined it because it did not like the first answer it received. It did the same for its definition of "Affected Cheese" and it is insinuating that Raw Farm is required to do expensive testing when that is not the case at all – Raw Farm voluntarily tests because it holds its products to a higher standard than what the law requires.

As will also be discussed below, the FDA is attempting to conflate issues and even pathogens. There was a Salmonella outbreak inside of California linked to Raw Farm's raw milk (which is outside the FDA's jurisdiction to regulate because raw milk is a state of California regulated product). As a result, and since October 2023 (which encompasses the full relevant time period on this motion), Raw Farm heightened its testing standards.

Then in February 2024, the CDC and FDA reported that there was an E. coli outbreak allegedly linked to Raw Farm's interstate sale of cheese (which the FDA can and does regulate). Hundreds of tests all came back negative for any connection to Raw Farm's products, including tests of the source raw milk and final aged cheeses. The State of California tests and tests from other states as well were all negative for any pathogens. There was no evidence whatsoever of so-

OPPOSITION TO MOTION TO ENFORCE DECREE

called product adulteration. Raw Farm disagreed strongly with the FDA's actions, which cost Raw Farm about $1,000,000 in lost revenues over a two-month period. The FDA even acknowledges that many sickened consumers denied consuming Raw Farm cheese.

The outbreak was declared over by the Center for Disease Control ("CDC") on March 26, 2024. But the FDA has continued to falsely accuse Raw Farm. Throughout the process, Raw Farm cooperated with the FDA, producing massive amounts of test data records, and responding to all of their requests. Raw Farm's position is and has been that they are clean and have always been. This position is fully supported by the raw milk testing data and raw cheese testing programs at Raw Farm. Raw Farm repeatedly invited the FDA to inspect and audit their facilities. The breakdown that lead to this motion is that the FDA did not want to inspect their facility and records and instead was insisting upon repeated (and seemingly endless) document productions through legal counsel.

Also, as will be discussed below, this is not the proper proceeding for the relief sought by the FDA. The subject Consent Decree was to address labeling issues; it was unrelated to product recalls. Given that the E. coli outbreak has been declared over and given that there is no adulterated or contaminated Raw Farm cheese in the market, the FDA's current attempt to recall Affected Cheese is unfounded and unnecessary. The FDA could have pursued a mandatory recall, which would have no doubt failed because it lacked legal basis. For all the reasons set forth herein, Defendants respectfully request that the instant motion be denied.

## II.    STATEMENT OF FACTS

### A.    Procedural Background

The underlying case dates back to April 2010, when the government established that Defendants mislabeled, misbranded, and shipped raw milk and raw milk products across state lines in violation of the FDCA. (See Dkt. 48). Defendant's actions constituted violations of 21 USC §331(a) and (d) and a Permanent injunction was issued. (*Id.*) Thereafter, in March of 2023, the government petitioned for and Order to Show Cause as to why Raw Farm, Mark McAfee and Aaron McAfee should not be held in contempt for violating the permanent injunction. In its briefing the government focused its arguments regarding Defendants' alleged noncompliance with paragraphs 2(B) and 2(F) of the preliminary injunction order. Specifically, they took issue with: (1) "claims

- 2 -

that their raw cheese can cure, mitigate, treat, or prevent disease" (Dkt. 50-2 at 11:10-11);[1] and (2) "they have not added the required statement on all of their retail invoices, packaging slips, [and] websites…"[2] (Dkt. 50-2 at 16:11-14). That dispute was never adjudicated by this Court as the parties were able to settle the matter, which included the parties agreeing to a Consent Decree. (Dkt. 66-1 and 67)

The Consent Decree specifically dealt with labeling issues. As a cursory review of the Consent Decree reveals, the specific provisions all had to do with retaining a "Labeling Expert" to review, report on, and audit Defendants' "product labels, labeling, promotional materials, websites or social media pages…"[3] (Dkt. 67. Exh. A at 2:3 to 4:21) None of those specific issues are the subject of the instant motion. Instead, the government is citing to the general provisions in Paragraph 7(A), (B), (D) and (F).

**B.    Substantive Background**

Prior to October 26, 2023,[4] Raw Farm's raw milk was linked to a Salmonella outbreak. Raw Farm only sells its milk in California. Raw Farm acknowledged that its milk was the cause and issued a single-state recall.[5] Given that milk does not keep very long, none of that milk is presently at issue as it would all be well beyond its sell-by date by now.

In December 2023 and January 2024, FDA inspectors, in collaboration with California

_____

[1] The government claimed that such claims caused Defendants' dairy products to be "drugs". (Dkt. 50-2 at 11:7)

[2] Much of the second issue was essentially the government trying to regulate Defendants' social media platforms such as Facebook and Instagram under the "website" language of the 2010 injunction. While none of this is part of the current dispute, it is only noteworthy to point out the stark difference between the claims leading up to the Consent Decree and the instant claims.

[3] The 2010 preliminary injunction did not mention "social media pages". The 2023 Consent Decree does.

[4] October 26, 2023 is the beginning of the relevant time period for the instant dispute, as identified by the FDA.

[5] It was not a multi-state recall as Raw Farm only ever sold its milk within California.

OPPOSITION TO MOTION TO ENFORCE DECREE

1    agencies, conducted 10 days of on-site inspections at Raw Farm. Even though Raw Farm's sale of

2    milk is exclusively within the state's purview and outside of the FDA's jurisdiction, Raw Farm

3    nonetheless fully cooperated with those inspections, including providing extensive documents.

4    Those inspections were concluded without incident. The matter was considered over.

5              <u>E. coli Outbreak (February 16 – March 26, 2024)</u>

6        A potential connection between a specific strain of E. coli, O157:H7, and a Raw Farm

7    product was brought to Raw Farm's attention on Friday, February 16, 2024. The FDA threatened a

8    mandatory recall but allowed for Raw Farm to do a voluntary recall instead. (See Declaration of

9    Aaron McAfee ("McAfee Decl") ¶¶14-15) That same day and before performing additional

10   research or due diligence and in an abundance of caution, Raw Farm immediately initiated a

11   voluntary recall. (*Id*. at ¶15) It should be noted that Raw Farm did so on the mere allegation out of

12   concern for the public health and on only 2-hours' notice. There was no causal information provided

13   to Raw Farm and no evidence of adulteration and Raw Farm was not aware of any. Nonetheless,

14   Raw Farm initiated the voluntary recall. (*Id*.)

15        While Raw Farm expedited the drafting of its voluntary recall notice so it could engage the

16   relevant agencies under the collaborative confines required by the FSMA, the FDA and CDC were

17   apparently finalizing their own versions to present to the public and it became glaringly obvious

18   that their versions would control – regardless of Raw Farm's input on the matter. This is evidenced

19   in part by the FDA's follow-up correspondence wherein they transmitted the FDA's version and

20   conclusively stated "[r]egardless of your action, or lack thereof, both CDC and FDA will be posting

21   today". (See McAfee Decl at ¶16 and Ex C thereto). Within minutes thereafter, Raw Farm's draft

22   Voluntary Recall Notice was transmitted and in the FDA's hands for what Raw Farm hoped would

23   be constructive and collaborative comment and consideration, but it seems they had already chosen

24   their narrative. (*Id*. at 17). Minutes thereafter, another email confirmed that both the FDA and CDC

25   had already completed their draft narratives and their versions confirmed that the intention was to

26   inform the public of what can only be termed as a "forever directive". In sum, both the FDA and

27   CDC notices refused to limit the recall in time and scope, by batch numbers, or other identifying

28   factors that could have had drastic effect on the products subject to recall, their eventual destruction,

and the like. (*Id*. at 18) For other recalls, the FDA typically published guidance to only avoid buying limited products, e.g. limited by batch or date.[6] But for Raw Farm, the FDA effectively told the public not to ever buy any of Raw Farm's cheese. The following is a February 2024 social media post from a Director at the FDA – Stic Harris expressing his personal opinion that people "should never drink raw milk or eat raw milk products" and then publishing pictures of Defendants' products:



And Raw Farm customers, heeding the FDA's guidance, stopped buying. Raw Farm lost about $1,000,000 in revenue as a result which is hugely impactful to the company. (*Id*. at ¶ 22)

Raw Farm voluntarily subjected its cheese products to additional third-party screening,

---

[6]   See:   https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/gibson-farms-voluntarily-recalls-organic-light-halves-and-pieces-shelled-walnuts-because-possible

See also:   https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022#:~:text=FDA%20recommends%20that%20if%20you,have%20touched%20the%20peanut%20butter

- 5 -

including by several state public health departments which were already underway, to test for the existence of E. coli pathogens in its recalled products. In sum, the California Department of Health, Utah Department of Health and Human Services, Colorado Department of Public Health and Environment all tested Raw Farms products and all tests come back negative, stating that the Raw Farm products do not contain E. coli O157:H7.[7] Likewise, after hundreds of samples were tested independently, and having received not a single positive result of E. coli (or any other pathogens), and after review of hundreds of internal source tests of the raw milk and aged raw cheeses from October 2023 to March 2024, Raw Farm informed the relevant agencies that it would be rescinding its voluntary recall on February 26, 2024, setting forth a multitude of issues it took with the conduct of the agencies in connection therewith. Raw Farm then rescinded its voluntary recall. (*Id*. at 24 and Exhibit F thereto; See also https://rawfarmusa.com/blog/recall-was-unfounded-and-is-now-lifted)

Notably, the FDA did not pursue a mandatory recall when Raw Farm lifted its voluntary lifted its recall. This clearly demonstrated that the recall was baseless. Instead, the FDA began requesting information from Raw Farm and Raw Farm fully complied. On February 28, 2024, Raw Farm offered to provide the FDA: (a) proof of test results for each and every batch of raw milk cheddar cheese manufactured since October 26, 2023 showing "negative" for all of three pathogens, Salmonella, E. coli O157:H7, and Listeria monocytogenes ("pathogens"); (b) proof of destruction of all raw milk cheddar cheese made with milk that was questioned during the December 2023 and January 2024 inspections; (c) continue their testing protocol to identify pathogens in ready-to-eat cheese, and obtain negative test results before said cheese is distributed in interstate commerce; and (e) allow the FDA to audit the foregoing test results. (See Declaration of Mark Figueiredo ("Figueiredo Decl") ¶ 2 and Ex A thereto)

///

---

[7] As has since been begrudgingly confirmed by the FDA itself, see https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-e-coli-o157h7-raw-cheddar-cheese-february-2024

OPPOSITION TO MOTION TO ENFORCE DECREE

1    The March 1 Letter Order

2        Rather than continue working with Raw Farm in good faith, and in apparent response to

3    Raw Farm lifting its voluntary recall, the FDA caused to be issued the Letter Order dated March 1,

4    2024. The Letter Order required Raw Farm to (1) audit its records regarding "Affected Cheese" it

5    made since October 26, 2023; (2) provide an audit report to FDA; (3) recall all Affected Cheese;

6    (4) destroy all Affected Cheese; (5) continue Raw Farm's testing protocol; and (6) cease distributing

7    in interstate commerce cheese made with "Affected Raw Milk". (See McAfee Decl at ¶ 25; See

8    also Plaintiff's motion, Bracy Declaration at Exhibit EE thereto)

9        Raw Farm fully complied with the Letter Order, with the caveat that Raw Farm voluntarily

10   tests even though it is not and has never been required to do so.[8] On March 6, 2024, Raw Farm

11   confirmed that "[R]aw Farm is, has been, and intends to continue to be in compliance with all

12   applicable laws, regulations, and orders. Raw Farm also confirms that it did not manufacture any

13   "Affected Cheese" since October 26, 2023".[9] (See Figueiredo Decl at ¶3 and Ex B thereto)

14        Defendants also provided all documents they believed were requested. (*Id.* at ¶6 and Ex D

15   and E thereto)

16        The government then re-defined "Affected Raw Milk" and "Affected Cheese" in subsequent

17   emails. (*Id.* at ¶3, 5 and Ex B thereto) Seeing that the government was moving the proverbial

18   goalposts, Raw Farm officially requested from the FDA : (1) The authoritative definitions of

19   "Affected Raw Milk" and "Affected Raw Cheese", (2) The authoritative requirement for testing of

20   pathogens in raw milk intended to be cured for cheese, and (3) The authoritative requirement for

21   _____

22

23   [8] The potential future issue is that Raw Farm may determine that it is best to change its voluntary
24   testing protocol in future, whether to update based on advanced technology, scientific discoveries,
     changing costs (the testing is very expensive), or other reasons. And in the absence of testing
25   protocols required by law, Raw Farm needs the flexibility to adapt in future.

26   [9] Just 2 days later, on March 8, 2024, Raw Farm received a test result showing that one of its
27   batches of cheese has tested positive for Salmonella. Raw Farm immediately destroyed the cheese
     before it ever left its facility and notified the FDA of same. (See McAfee Decl at ¶ 27) This was
28   the only batch of "Affected Cheese" in the relevant time period and it was immediately detected
     and destroyed thanks to Raw Farm's testing protocols.

- 7 -
OPPOSITION TO MOTION TO ENFORCE DECREE

testing of pathogens in 60 day cured cheese made from raw milk per 21 CFR § 1240.61. (*Id.* at ¶ 6 and Ex E thereto) At the same time, Raw Farm provided all Cheese Make Sheets for all the cheese it made in the relevant time period. (*Id.*) Defendants further reiterated Raw Farm's open invitation to audit their facilities to get whatever additional information and documents it wanted. (*Id.*) As of this date, the FDA has either ignored the requests or refused to provide the authority that would empower the FDA to make these demands on Raw Farm.

The Department ignored the change in their definitions of "Affected Raw Milk" and "Affected Cheese", and did not provide any authoritative definitions for those terms. Instead, the Department responded with the equivalent of discovery requests. (*Id.* at ¶ 3, 5 and Ex B)

Defendants responded that the requests above was no small task, reiterated its open-door policy for future inspection, presented a series of questions, considerations and action plans for the Department's consideration and requested if it would withdraw its onerous request. (*Id.* at ¶ 7 and Ex B thereto) In further back-and-forth dialogue, Counsel reiterated Raw Farm's desire to address the Department's concern through a site inspection and/or meeting with the Department (rather than back-and-forth through counsel) and explained the extreme and time-consuming burden in responding to the requests, notwithstanding the fact that there was still confusion of the Department's definitions and requests. More importantly, it was made clear that the impacts of continued legal fees, in addition to the FDA's associated guidance with respect to the recall itself – causing some of Raw Farm's customers to refuse to carry their products resulting in roughly $1,000,000 decline in revenue – and offered its assistance in setting up a site visit, which could go forward without Counsel's presence. (*Id.* at ¶ 8 and Ex B thereto)

The instant dispute came to a head over document requests. Not about refusal to provide documents but rather whether they would be provided through counsel or by allowing a site inspection. Specifically, the FDA's last substantive communication, on April 9, 2024 was:

> FDA has authority to request these documents under the injunction and letter order. Other than copying/and or scanning, I'm not sure what else needs to be done on your end. FDA has even provided specific examples of the business records that they are requesting. **Thanks again for your offer of an on-premises audit, but these records—to which FDA is clearly entitled—should accomplish the same result.**

- 8 -

1   (*Id*. at ¶ 9 and Ex B thereto) (emphasis added) Raw Farm responded that it wanted to do this

2   through a site visit and not with back and forth through counsel. (*Id*. at ¶ 9 and Ex B thereto) Raw

3   Farm further explained that (1) to produce the documents already sent, it was very time-consuming

4   given the way they were maintained and the analysis necessarily required; and (2) that Raw Farm

5   was damaged financially from the $1,000,000 drop in revenue as a result of the FDA's expansive

6   guidance with subsequent suspension of raw cheese sales and that it would rather "re-open their

7   doors" via a site inspection than to go through seemingly never-ending (and therefore costly)

8   rounds of back-and-forth through counsel. (*Id*.) This motion then followed.

9   <u>Outbreak Over; Outbreak Investigation Closed</u>

10   On March 26, 2024, the CDC announced that the outbreak is over. (See

11   https://www.cdc.gov/ecoli/raw-milk-cheese-2-24/index.html). The FDA itself declared that the

12   outbreak investigation is closed without ever providing any evidence of raw cheese adulteration

13   or finding a pathogen. (See https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-

14   investigation-e-coli-o157h7-raw-cheddar-cheese-february-2024.) It further states that "[A]s part

15   of this investigation, officials in CO, CA, and UT collected various RAW FARM-brand products

16   for testing, and all samples were negative for E. coli." (McAfee Decl at ¶ 29 and Ex K.)

17   **Cheese Manufacturing / The Basics**

18   RAW FARM has been selling tested high-quality, raw dairy products for over two decades

19   now (since 1998). Raw Farm's cheese made from raw milk has aged a minimum of 60 days and is

20   truly traditional, artisan raw cheddar. Made with Whole Raw Milk from cows that graze on lush

21   pasture, seasonally. Each block of Raw Farm raw cheese is packed with bioavailable vitamins,

22   minerals, enzymes, beneficial bacteria, naturally occurring CLA, and Omega-3 fatty acids.

23   The timing of milk production in connection with the manufacturing high quality artisan

24   raw cheddar comes with a caveat – the milk should be used immediately. The best cheese must be

25   made from fresh milk. (*Id.* at ¶ 8) The Cheese production starts almost immediately after milking

26   takes place. (*Id*.) Cheese made from milk that is too old is inferior to high quality artisan cheese

27   where the production process starts immediately. (*Id*.) It appears the FDA is taking the position that

28   all cheese manufacturing should be put on hold to allow additional time for testing of milk to

determine if pathogens exist, prior to pasteurization or alternative pasteurization methods. This position conflicts with the current FDA standards for production of 60 day aged and cured raw cheeses. No testing of milk or final cheese is ever required. 60 days of aging is the FDA alternative to pasteurization. The problem with this approach is that 1) it is the authority of the state to monitor raw milk production/distribution activities, not the FDA's purview, and more importantly 2) testing can take up to ten days to receive culture confirmed final results – an amount of time far beyond the usability of milk for cheese production and a practice so prohibitively expensive few, if any, other producers voluntarily (or mandatorily) conduct.

Pasteurization is the process of heating every particle of milk or milk product, using approved equipment, to a specific temperature for a specific period of time to effectively kill harmful bacteria. (See https://www.cdfa.ca.gov/ahfss/Milk_and_Dairy_Food_Safety/rawmilk.html) Pasteurization of milk was adopted a century ago as a basic public health measure to kill dangerous bacteria and largely eliminate the risk of getting sick from one of the most important staples of the American diet. In 1987, the FDA issued a regulation prohibiting the interstate sale of raw milk. (See 21 USC 1240.61). However, states have allowed the production and sale of raw milk using their own standards regardless of the FDA demand for pasteurization. In California, the American Association of Medical Milk Commissions established Certified Raw Milk Standards starting as far back as 1893 (Dr. Coit established AAMMC in New Jersey and adopted by states afterwards. California Food and Ag Code allows for the legal sale of raw milk based on Certified Raw Milk standards plus additional standards required in California). The FDA refuses to acknowledge these standards which require that raw milk meet and exceed pasteurized milk standards but without being first pasteurized. The FDA detests this clean raw milk standard because it clearly exposes that the FDA standards for raw milk for pasteurization is filthy and filled with pathogens (See Detection and Enumeration of Four Foodborne Pathogens in Raw Commingled Silo Milk in the United States; Journal of Food Protection, Vol. 75, No. 8, 2012, Pages 1382–1393)[10].

_____

[10]  For the Court's convenience, a copy of the Abstract is attached to the McAfee Decl at Ex A.

OPPOSITION TO MOTION TO ENFORCE DECREE

With respect to cheese production, a pasteurization alternative was enacted by congress. (See 21 USC 133.113(a)). Again, like traditional pasteurization, time and heat are still part of the equation. But because it takes longer for cheese to cure, and because the curing process is done at much lower temperatures, congress mandated that "If the dairy ingredients used are not pasteurized, the cheese is cured at a temperature of not less than 35 °F for at least 60 days." (*Id*.). Thus Congress has enacted legislation to accommodate the cheese making process, while at the same time protecting the public by ensuring an approved pasteurization alternative method. Raw Farm is in full compliance with these standards and goes far beyond them by performing PCR testing of source milk and final products.

## III.    LEGAL ANALYSIS AND ARGUMENT

As set forth in the Consent Decree, 5 USC § 706(2)(A) governs this dispute and states in pertinent part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall— (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right

5 USC § 706(2)(A); See also Consent Decree at ¶13.

Courts may set aside as arbitrary and capricious agency action which contradicts that agency's own regulations. See *Erie Boulevard Hydropower, LP v. Fed. Energy Regulatory Comm'n*, 878 F.3d 258, 269 (D.C. Cir. 2017). However, deference is due to an agency's interpretation of its own otherwise ambiguous regulation, **unless that interpretation is "plainly erroneous or inconsistent with the regulation."** *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (emphasis added).

**A.     FDA's Requests Are Arbitrary And Capricious Because The Consent Decree Was For Labeling Issues And Not Cheese-Making They In Contravention Of The Law**

The Consent Decree at issue was born out of a labeling issue. The provisions therein relate

- 11 -

to Raw Farm obtaining a Labeling Expert, site inspections and submission of Labeling Expert reports, marketing and representation of product issues, and any other violations of the FDCA stemming from those labeling/marketing activities.

The FDA has the power to do a mandatory recall, subject to compliance with the legal requirements for doing so. (See 21 USC § 3501) There are multiple impediments to the FDA pursuing a mandatory recall. As just one example, the statute requires the FDA to show that there is adulterated food in the market which needs recalling. But here, there is no such adulterated food in the market and even the CDC has declared the outbreak over.

Instead of pursuing relief pursuant to 21 USC § 3501, the FDA is instead trying to have this Court order a mandatory recall by claiming a violation of the Consent Decree. This bypasses the "reasonable probability" analysis and determination that a food is adulterated under section 21 USC § 342 as well as other requirements. And it is also nonsensical in this case where there is no bad cheese on the market that needs recalling. In effect, the government is advocating an expansive, limitless reading of the Consent Decree such that it could order Raw Farm to do anything that it claims is needed to cure any violation under the law. The Consent Decree should not be construed beyond its intended purpose, which was to resolve the labeling issues. On this ground alone, the instant motion should be denied.

**B.    FDA's Requests Are Arbitrary And Capricious Because They In Contravention Of The Law**

Even assuming that the government could use the Consent Decree as a substitute for going through the mandatory recall process, this motion should still be denied because Raw Farm is not in violation of any applicable laws as evidenced by the FDA inspectors themselves in the ten-day February 2024 inspection.

**1.    Raw Farm's Compliance With 21 CFR § 133.113(a)**

In essence, what the government takes issue with is that Raw Farm is making cheese with raw, unpasteurized milk. But what Raw Farm is doing is legal. 21 USC § 1240.61, states in relevant part:

> (a) No person shall cause to be delivered into interstate commerce or shall sell, otherwise distribute, or hold for sale or other distribution after shipment

- 12 -

1
2
3

in interstate commerce any milk or milk product in final package form for direct human consumption unless the product has been pasteurized or is made from dairy ingredients (milk or milk products) that have all been pasteurized, **except where alternative procedures to pasteurization are provided for by regulation, such as in part 133 of this chapter for curing of certain cheese varieties.**

4   See 21 USC § 1240.61 (emphasis added) The government's position is that they do not like the

5   "except" language and so they want to enforce the law as if it did not exist. The government points

6   to studies

7       In relation to the above statue, and specifically delineated towards cheddar cheese, 21 CFR

8   § 133.113(a) allows for a 60-day curing in lieu of Pasteurization:

9       (a) Description.

10
11
12
13
14

(1) Cheddar cheese is the food prepared by the procedure set forth in paragraph (a)(3) of this section, or by any other procedure which produces a finished cheese having the same physical and chemical properties. The minimum milkfat content is 50 percent by weight of the solids, and the maximum moisture content is 39 percent by weight, as determined by the methods described in § 133.5. **If the dairy ingredients used are not pasteurized, the cheese is cured at a temperature of not less than 35 °F for at least 60 days.**

15

16   (See 21 USC § 133.113 (emphasis added)) There is no testing requirements for the ingredients

17   used in cheese making, or for the cheese itself and the government points to none. Simply stated,

18   the law allows any cheese-maker to lawfully make cheese with untested milk, so long as the milk

19   is (a) pasteurized; or (b) cured for 60 days. The FDA simply does not like the second (legal) option,

20   which Raw Farm complies with. But whether the code should be re-written is not something that

21   can or should be done selectively just to apply to Raw Farm.

22       Further, as FDA points out, there is literature concluding that pathogens can survive 60-

23   day curing.[11] But there is also literature about pathogens surviving pasteurization. One such study

24

25

26   [11] Though what the FDA does not point out is that those studies involved samples that were
27   unnaturally adulterated to levels many times what would occur in actual milk. Also neglected is
     that Raw Farm (which does consider itself to be an industry leader with its testing protocols) has
     offered to cooperate with the FDA to study whether 60-day curing is enough or if it should be
28   increased.

found that Milk from cows inoculated with Listeria monocytogenes (L. monocytogenes) can survive the minimum high-temperature, short-time treatment (71.7 degrees C, 15 s) required by the U.S. Food and Drug Administration for pasteurizing milk.[12] In fact, there are many outbreaks for pasteurized products as well. The FDA and CDC, in collaboration with state and local partners, are currently investigating illnesses in a multi-year, multistate outbreak of *Listeria monocytogenes* infections linked to queso fresco and cotija cheeses manufactured by Rizo Lopez Foods, Inc., of Modesto, California.[13] A sample of Rizo Bros Aged Cotija tested positive for *Listeria monocytogenes* during sampling conducted by the Hawaii State Department of Health's Food and Drug Branch in January 2024. (*Id*.) A cursory review of their website confirms that the product recall is attributable to product that the company uses <u>pasteurized milk</u> as the base ingredient. (See https://rizobros.com/product/cotija/). The FDA's attacks on the 60-day curing appear designed to turn this Court's proverbial stomach in the hope that this Court ignores the law as a result.

In that regard, it should be noted that Raw Farm's voluntary testing protocols are already in place and the March 8 incident is an excellent case study. As it does almost daily, Raw Farm had completed curing several batches of cheese for the required 60 days. Raw Farm was holding that cheese pending receipt of tests that it chooses to do before releasing any of its cheese. One batch came back with a positive test result for Salmonella. Raw Farm immediately pulled that batch and destroyed it. What is also noteworthy is that Raw Farm had tested the milk that went into that batch. <u>The milk had tested negative</u>. That milk went into three batches of cheese. Only one batch of cheese tested positive. The other two were negative. This episode refutes the FDA's implicit argument that adulterated cheese must mean adulterated milk. How could clean milk go into three batches of cheese with two coming out clean and one coming out contaminated? We do not know exactly. But what we do know is that Raw Farm has a testing protocol to test <u>all</u> its

---

[12] https://journals.asm.org/doi/abs/10.1128/aem.53.7.1433-1438.1987
[13] See https://www.fda.gov/safety/major-product-recalls/2024-recalls-food-products-associated-dairy-products-rizo-lopez-foods-inc-due-potential-risk

1   cheese before it is ever distributed for sale. (See McAfee Decl at ¶ 11) So, the result is that no

2   contaminated cheese goes to market.[14] This has been the case since the Salmonella outbreak in

3   2023. And this is in part why Raw Farm rescinded its voluntary recall based on the unfounded E.

4   coli allegations – because Raw Farm had test confirmed clean tests on all the cheese before it even

5   went to market.

6          **2.   The March 1 Letter Order offends the Administrative Procedure Act (APA)**

7          In addition to offending the boundaries of the consent decree itself, the FDA's March 1

8   Letter Order also offends the Administrative Procedure Act (APA). The APA is considered the

9   constitution for the operation of federal administrative agencies, and defines the limits of their

10  power.

11         As per 5 USC. § 706(2), the Act provides a list of reasons that a court could use for setting

12  aside an agency action:

13         "The reviewing court shall—
           …
14           (2) hold unlawful and set aside agency action, findings, and conclusions, found
           to be—
15
               (C) in excess of statutory jurisdiction, authority, or limitations, or short
16         of statutory right;

17         As per the regulation, a cheese is safe for consumption if the milk used to make it, was either

18  pasteurized, OR "cured at a temperature of not less than 35° F for at least 60 days." The particular

19  cheddar cheese that is the target of the FDA's Letter Order from March 1, 2024, was manufactured

20  in accordance with 21 CFR § 133.113(a)) and 21 USC § 1240.61. Since the FDA continues to

21  pursue Raw Farm for violations that are not really violations at all, the FDA is acting "in excess of

22  statutory jurisdiction." 5 USC § 706(2)(C).

23         There is precedent from this very court (U.S. District Court, Eastern District of California)

24  voiding an agency action, for acting contrary to the language of the statute. In 2012, the Department

25  _____

26

27  [14] The FDA's issue with the "small sample" being tested is indicative that nothing short of
    pasteurization will satisfy the FDA. How big of a sample does the FDA want tested? If all the
28  cheese goes into testing, then there would be nothing left to sell.

of Agriculture (USDA) and defendant disputed the meaning the word "wetland." The District Court held that there was no ambiguity over the term "wetland," and thus the USDA was acting in excess of jurisdiction. (See *Koshman v. Vilsack,* 865 F.Supp.2d 1083 (E.D. Cal., 2012)). In general, an agency is given broad latitude to interpret statutes and regulations (i.e. *Chevron*[15] deference). But this latitude ceases, when the agency is acting in an "arbitrary or capricious" manner. *Stinson v. United States,* 508 U.S. 36, 45 (1993)[16]. "Arbitrary or capricious" is equated to "**plainly erroneous or inconsistent with the regulation**." *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (emphasis added). "Although it is within the power of an agency to amend or repeal its own regulations, an agency is not free to violate its regulations while they remain in effect." *U.S. Lines, Inc. v. Fed. Mar. Comm'n,* 584 F.2d 519, 526 n. 20 (D.C. Cir. 1978).

There is also precedent for the Court of Appeals setting aside an agency action, for being arbitrary and capricious. (See *Panhandle Eastern Pipe Line Co. v. FERC,* 613 F.2d 1120, 1135 (D.C. Cir. 1979). In that case, the plaintiff (Panhandle) was a pipeline operator who obtained a permit from the Federal Energy Regulatory Commission (FERC) to transport natural gas. Panhandle had a fee dispute with FERC, and argued that FERC was deviating from its formula (as dictated by agency regulations) when calculating the way that revenues would be credited. The D.C. Circuit held that FERC was adding a particular fee (transportation costs) that was not authorized under the pertinent regulation (18 CFR § 154.38(d)(4). The statute clearly listed what were the appropriate costs that FERC was allowed to charge, and "transportation costs" did not show up on the list. By inappropriately billing Panhandle, FERC was "playing fast and loose with its own regulations," and the Court set aside the agency order to pay up. (See *Panhandle,* 613 F.2d at 1135). The Court also said "it has become axiomatic that an agency is bound by its own regulations. The fact that a regulation as written does not provide FERC a quick way to reach a

---

[15] *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 468 U.S. 837 (1984).

[16] "An agency interpretation [of its own regulations] that "does not violate the Constitution or a federal statute … must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Stinson, supra,* at p. 45.

OPPOSITION TO MOTION TO ENFORCE DECREE

desired result does not authorize it to ignore the regulation and label it 'inappropriate.' " The court also said that an agency does not have authority to "play fast and loose with its own regulations." *Ibid.*

Here, the FDA's attempt to regulate Raw Farm's cheese production is arbitrary or capricious because it is plainly inconsistent with the applicable regulation: 21 CFR § 133.113(a), to which there is no credible argument that this statute itself is ambiguous or warranting agency deference in its determination or application. Just like what FERC did in *Panhandle,* the FDA is trying "to play fast and loose," and read into the regulation language that is simply not there. By acting in excess of jurisdiction (§ 706(2)(C)), the FDA is also acting in a manner that is arbitrary or capricious. (§ 706(2)(A)). This statute says that what Raw Farm is doing (curing their cheese for 60 days) is acceptable, but the FDA appears to not think so.

### 3. Intrastate Sale Of Milk Is Exclusively for The State Of California To Regulate

Raw Farm's dairy is exclusively in the State of California. (See McAfee Decl at ¶ 2) And Raw Farm only sells its milk within the State of California. (*Id*.) Accordingly, it is not for the FDA to regulate Raw Farm's milk. The FDA makes a backdoor attempt to do so by defining and re-defining Affected Raw Milk.

Raw Farm maintains separate pens for milk production and cheese production. But cows are not fixtures. Or faucets. Cows only produce milk after calving and then the milk can dry up and then the cow can have another calf. A single cow may well spend some time in the cheese pen; other time in the milk pen; and the rest of the time in the field, not producing any milk at all.

It appears the FDA is attempting to justify its attempted regulation of the milk per 21 USC § 331(k) based upon another cheese component (salt) being obtained outside of California. But that statute requires that the act be "done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated." (emphasis added) The only time that the cheese is held for sale is after it is made. The act of putting the milk in happened well before then.

///

OPPOSITION TO MOTION TO ENFORCE DECREE

C.     **Raw Farm's Voluntary Testing And Willingness To Work With FDA In Crafting Appropriate Legislation**

Raw Farm's pre and post manufacturing practices are a model for the industry and far exceed any industry (or government) testing requirements. As part of its rigorous testing and adherence to a food safety culture: 1) The company's Food Safety Plan is fully compliant with the FDA Food Safety Modernization Act (FSMA). (*Id*. at ¶ 5) Testing elements include (but not limited to): detailed Hazard Analysis and Critical Control Points (HACCP), Third party audits (Passing), monthly GMP Audits, environmental monitoring, etc., 2) Dairy level testing is extensive and broad, but most importantly includes a pioneering and industry leading weekly testing procedures that tests each cow for all 4 human pathogens (E.coli 0157:H7, Listeria Monocytogenes, Salmonella, Campylobacter), and 3) Because Raw Farm does sell unpasteurized milk with no curing period inside the State of California where it is legal to do so, its standards are extremely high and Raw Farm goes beyond the requirements of CDFA (CA Dept of Food and Agriculture) which regulates raw milk in CA to ensure safety in every finished package. (*Id*. at ¶ 4)

No other cheese-makers are required to perform pre-manufacturing testing on its raw milk and raw milk products. No other cheese-makers are required to destroy raw milk or raw milk products, based solely on the pre-manufacturing testing mandates that the FDA now demands upon Raw Farm. While Raw Farm voluntarily tests its manufacturing components (both during and post manufacturing in most instances), it is not aware of any other manufacture requirement to test its products prior to the pasteurization (or alternative pasteurization) process. (*Id*. at 12)

Raw Farm has continually extended its open door policy to the FDA regarding both inspections, and its willingness to work with the FDA to develop new regulations to (a) promulgate testing protocols for the industry to follow; and (b) improve the curing process to conform to current science so as to protect the public health. The FDA is uniquely positioned to advance these causes throughout the industry and it should do so whether it accepts Raw Farm's offers or not. Raw Farm has tried for many years to meet with the FDA to build a stronger relationship and share the understanding of Raw Farm testing and human consumption standards. The FDA refuses to meet or confer. The FDA avoids any contact or acknowledgement that raw milk for human consumption

- 18 -

OPPOSITION TO MOTION TO ENFORCE DECREE

is produced and consumed widely in California. Leadership at FDA (Dr. Stic Harris via LinkedIn account, *supra*) instead announces their disdain for raw milk even though the FDA does not regulate raw milk. Regardless, the FDA continues its unrelenting attack against raw milk inside of California even though raw milk is beyond its scope of authority.

## IV.    CONCLUSION

The FDA clearly does not want people to consume raw milk or raw cheese. But the law allows Raw Farm to sell its raw milk within the State of California; and to sell its raw cheese across state lines. Raw Farm complies with the 60-day curing provisions within the Federal Regulations. That the FDA does not like the law is not grounds to hold Raw Farm liable for violating the law. This was not what the Consent Decree addressed. At all. There is no pending outbreak or health scare relating to Raw Farm and no adulterated products of Raw Farm on the market to recall or destroy. Defendants have been fully cooperative and have produced documents and confirmations. The breakdown here is that Defendants have been financially bludgeoned by the FDA and sought to save on their legal fees by allowing the FDA to get what they wanted through an on-site inspection.

For all of the foregoing reasons, Defendants respectfully ask that this Court deny this motion.


Date: May 8, 2024                                    STRUCTURE LAW GROUP, LLP


                                                     By: /s/Mark R. Figueiredo
                                                         Mark R. Figueiredo, Esq.
                                                         Attorneys for Defendants Raw Farm, LLC
                                                         fka Organic Pastures Dairy Company,
                                                         LLC; and Mark McAfee

OPPOSITION TO MOTION TO ENFORCE DECREE