1   BRIAN B. BOYNTON
    Principal Deputy Assistant Attorney General
2   ARUN G. RAO
    Deputy Assistant Attorney General
3   AMANDA N. LISKAMM
    Director
4   ROGER J. GURAL
    Senior Trial Attorney
5   U.S. Department of Justice
    Consumer Protection Branch
6   450 Fifth Street, N.W., Suite 6400S
    Washington, D.C. 20001
7   Tel: 202-307-0174
    Email: roger.gural@usdoj.gov
8
    PHILLIP A. TALBERT
9   United States Attorney
    EMILIA P. E. MORRIS
10  Assistant United States Attorney
    Robert E. Coyle United States Courthouse
11  2500 Tulare Street, Suite 4401
    Fresno, CA 93721
12  Tel: (559) 497-4084
    Email: Emilia.Morris@usdoj.gov
13
    Attorneys for Plaintiff
14  United States of America

15              **IN THE UNITED STATES DISTRICT COURT**

16          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

17

| | |
|---|---|
| 18 UNITED STATES OF AMERICA | ) Case No.: 1:08-CV-01786 |
| 19         Plaintiff, | ) **REPLY IN SUPPORT OF THE UNITED** |
| | ) **STATES OF AMERICA'S MOTION TO** |
| 20   vs. | ) **ENFORCE THE CONSENT DECREE** |
| | ) |
| 21 ORGANIC PASTURES DAIRY COMPANY, | ) HEARING DATE: May 24, 2024 |
| LLC, a corporation, and MARK McAFEE, an | ) TIME: 9:00 AM |
| 22 individual, | ) PLACE: Courtroom 6, Fresno |
| | ) JUDGE: Hon. Jennifer L. Thurston |
| 23 | ) |
|         Defendants. | ) |
| 24 | ) |
| 25 | ) |
| 26 _____ | ) |

27

28

**INTRODUCTION**

Raw Farm's[1] opposition is significant for what it fails to dispute: that Raw Farm uses raw milk that is known or suspected to contain three dangerous pathogens, *Salmonella* Typhimurium, *E. coli* O157:H7, and/or *Listeria monocytogenes*, to manufacture its raw milk cheddar cheese that it distributes in interstate commerce. Neither does Raw Farm dispute that these pathogens can survive in raw milk cheddar cheese that has been aged for 60 days in accordance with 21 C.F.R. § 133.113(a). Nor could it, because pathogen test results from the California Department of Food and Agriculture, the California Department of Public Health, and Raw Farm's own third-party laboratory reveal that Raw Farm's 60-day aged cheese has tested positive for pathogens.

In its opposition, Raw Farm takes issue with the U.S. Food and Drug Administration's ("FDA" or the "Agency") reliance on the Consent Decree, ECF No. 67 ("Decree"), a court order entered less than a year ago, to which Raw Farm voluntarily agreed after this Court found that Raw Farm had violated this Court's 2010 Order of Permanent Injunction. Raw Farm argues that FDA cannot rely on the Decree to remedy Raw Farm's violations of the Federal Food, Drug, and Cosmetic Act ("FDCA" or the "Act"). But the Decree expressly provides FDA with the exact authority it exercised in issuing the March 1, 2024 Letter Order. Raw Farm also argues that its raw milk cheddar cheese is not adulterated under the FDCA because it is manufactured in accordance with the 60-day aging regulation, 21 C.F.R. § 133.113, but Raw Farm ignores that the regulation is a standard of identity to prevent economic adulteration, not to ensure safety. Regardless of adherence to the 60-day aging regulation, the Act prohibits Raw Farm's distribution of adulterated food in interstate commerce. And Raw Farm's suggestions that FDA is attempting to regulate the intrastate sale of raw milk and all interstate sales of raw cheese and that FDA is unfairly targeting Raw Farm are frivolous.

FDA's determinations are supported by sound evidence and the plain language of the FDCA. For those reasons, and because Raw Farm fails to proffer any reason why it should be

---

[1] For ease of reading, the United States uses "Raw Farm" herein to refer to Defendant RAW FARM, LLC; Defendant Mark McAfee; and RAW FARM, LLC's President, Aaron McAfee, who is an "Associated Person" bound by the terms of the 2010 Permanent Injunction and 2023 Consent Decree in this case. *See* Consent Decree, ECF No. 67, ¶¶ 2–3.

1  excused from complying with the provisions of the Letter Order issued by FDA, this Court should

2  compel Raw Farm to comply with the Decree and the FDCA by entering the Proposed Order

3  submitted with the United States' motion.

4  **ARGUMENT**

5  **A.    The Decree Expressly Confers Upon FDA the Authority to Issue the Letter Order**

6         Raw Farm argues that the Decree issued in this case is limited to labeling issues and not

7  cheese-making and that FDA is asking the Court to "construe[] [the Decree] beyond its intended

8  purpose," Opp. to Pl.'s Mot. to Enforce Consent Decree, ECF No. 78 ("Opp."), at 11–12. However,

9  by its own terms, the Decree states that "[i]f, at any time after this Decree has been entered, FDA

10 determines, based on the results of an inspection . . .  or any other information, that Defendants have

11 . . . violated the FDCA," FDA may order Raw Farm to take numerous specified actions not

12 specifically tied to labeling such as ceasing to manufacture (¶ 7(A)), recalling any violative FDA-

13 regulated product (¶ 7(B)), issuing public safety alerts (¶ 7(D)), and "[t]ak[ing] any other corrective

14 actions, as FDA, in its discretion, deems necessary to protect the public health" (¶ 7(F)).

15        The United States sought this injunctive authority in its prior contempt action filed against

16 Raw Farm after Raw Farm continued to violate the FDCA and this Court's 2010 Order of

17 Permanent Injunction. *See* Mem. of Law in Support of USA's Pet. for Order to Show Cause Why

18 Raw Farm Should Not Be Held in Civil Contempt, ECF No. 50-2 ("Show Cause Mem."), at 1–2, 5–

19 9; Reply in Support of Show Cause Mem., ECF No. 60, at 6–7. Raw Farm's own continuing

20 violations of the FDCA served as the basis for the United States to seek the letter order provision

21 that Raw Farm now contests. *See* Show Cause Mem. at 20–21 (explaining that such relief was

22 necessary for "FDA . . . to take swift appropriate action to safeguard public health without having to

23 further involve the Court").

24        As described at length in the United States' opening brief, FDA concluded that Raw Farm's

25 raw milk cheddar cheese is adulterated under 21 U.S.C. § 342(a)(4)[2] because it is made from raw

26

27 _____

28 [2] 21 U.S.C. § 342(a)(4) provides that "[a] food shall be deemed to be adulterated . . . if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health."

milk that is known or suspected to contain any of three dangerous pathogens, *Salmonella* Typhimurium, *E. coli* O157:H7, and *Listeria monocytogenes*, which all can survive the 60-day aging period. Mem. of Law in Support of USA's Mot. Enforce Decree, ECF No. 71 ("Mem."), at 9–12. Raw Farm's manufacture and distribution of this adulterated raw milk cheddar cheese in interstate commerce violates the FDCA, specifically 21 U.S.C. § 331(a) (prohibiting the introduction of adulterated food into interstate commerce) and 21 U.S.C. § 331(k) (prohibiting the doing of any act that results in food being adulterated while held for sale, after shipment of one or more of its components in interstate commerce).[3] Mem. at 13–14. After unsuccessfully attempting to obtain voluntary compliance from Raw Farm, Mem. at 6, FDA issued the March 1, 2024 Letter Order pursuant to the authority specifically provided to it by this Court (and agreed to by Raw Farm) in the Decree, and narrowly tailored the Letter Order based on FDA's scientific analysis to address the serious risks to the public associated with consumption of Raw Farm's adulterated raw milk cheddar cheese.

The United States was compelled to involve the Court only because Raw Farm chose not to "immediately and fully comply with the terms of the [Letter O]rder," as it is legally bound to do (and which it agreed it would do) under Paragraph 8 of the Decree. Indeed, the United States attempted to obtain Raw Farm's voluntary compliance for several weeks after issuing the Letter Order and before filing its motion to enforce the Decree. *See* Mem. at 6–8.  And contrary to Raw Farm's allegation, FDA did not "mov[e] the goalpost," Opp. at 7; rather, FDA simply clarified, at Raw Farm's request, which supporting documentation FDA needed to verify Raw Farm's *still* unsupported assertion "that [it had] not manufactured any 'Affected Cheese,' since October 26,

---

[3] Contrary to Raw Farm's assertion that the cheese is only "held for sale [ ] *after* it is made," Opp. at 17, it is well established that the shipment in interstate commerce of components of a regulated article used in the manufacture of a finished product confers jurisdiction under 21 U.S.C. § 331(k). *See Baker v. United States*, 932 F.2d 813, 816 (9th Cir. 1991) (holding that "wholly intrastate and manufactures and sales of drugs are covered by 21 U.S.C. § 331(k) as long as an ingredient used in the final product travelled in interstate commerce"); *United States v. Dianovin Pharms., Inc.*, 475 F.2d 100, 103 (1st Cir. 1973) (holding that use of components shipped in interstate commerce in drug manufacturing brings the activities within § 331(k)); *see also United States v. An Article of Food*, 752 F.2d 11, 14 (1st Cir. 1985).

1   2023." Mem. at 7 (citing Decl. of Darla R. Bracy, ECF No. 71-3 ("Bracy Decl."), ¶ 37 and Ex. GG).

2   To date, Raw Farm has not provided such documentation. Mem. at 7 (citing Bracy Decl. ¶ 43). Raw

3   Farm's argument that it is too burdensome on the company to collect the documentation rings

4   hollow, particularly since FDA went so far as to identify the requested records by name and provide

5   examples. Mem. at 7 (citing Bracy Decl. ¶ 34 and Ex. DD).

6        In sum, Raw Farm's argument that FDA cannot employ a provision to which Raw Farm

7   agreed and the Court ordered in order to protect the public health is meritless.

8   **B.   FDA's Cheese Standard of Identity Regulation is Not a Safety Standard and is Not Inconsistent with the FDCA's Adulteration Provision**

9

10       Raw Farm's assertion that FDA's Letter Order is arbitrary and capricious, Opp. at 15–17, is

11  flawed because it relies on the false premise that Raw Farm's compliance with the 60-day aging

12  regulation, 21 C.F.R. § 133.113, precludes it from otherwise violating the FDCA. As explained in

13  the United States' opening brief, the 60-day aging regulation is a standard of identity intended to

14  prevent economic adulteration of raw milk cheddar cheese, not to ensure that raw milk cheddar

15  cheese is safe for human consumption. *See* 21 U.S.C. § 341 (providing that the Secretary shall set

16  standards of identity that "will promote honesty and fair dealing in the interest of consumers"); *see*

17  *also* Mem. at 12–13. Raw Farm has a separate, independent obligation to ensure that its raw milk

18  cheddar cheese is not prepared under insanitary conditions whereby it may have been rendered

19  injurious to health. *See* 21 C.F.R. § 130.3(c) ("No provision of any regulation prescribing a

20  definition and standard of identity . . . under section 401 [21 U.S.C. § 341] of the [FDCA] shall be

21  construed as in any way affecting the concurrent applicability of the general provisions of the

22  [FDCA] and the regulations thereunder relating to adulteration and misbranding. For example, all

23  regulations under section 401 [21 U.S.C. § 341] contemplate that the food and all articles used as

24  components or ingredients thereof shall not be poisonous or deleterious and shall be clean, sound,

25  and fit for food."); *see also* 21 U.S.C. §§ 331(a), 342(a)(4). Raw Farm has failed to meet this

26  obligation because it manufactures raw milk cheddar cheese using milk that is known or suspected

27  to contain three dangerous pathogens that can survive the 60-day aging process, rendering the

28  cheese adulterated under 21 U.S.C. § 342(a)(4). Mem. at 9–12.

1     The cases cited by Raw Farm are inapposite. In *Panhandle Eastern Pipe Line Co. v. Federal Regulatory Commission*, 613 F.2d 1120 (D.C. Cir. 1979), and *Koshman v. Vilsack*, 865 F. Supp. 2d 1083 (E.D. Cal. 2012), Opp. at 15–17, the agencies' interpretations were held to be inconsistent with a regulation or statute. Setting aside that FDA's conclusion that Raw Farm's raw milk cheddar cheese is adulterated relies on a standard of safety, 21 U.S.C. § 342(a)(4), and the 60-day aging rule is not a standard of safety, the plain language of 21 C.F.R. § 130.3(c) expressly harmonizes both, making clear that the 60-day aging rule, among others, would not "affect[] the concurrent applicability of the general provisions of the act and the regulations thereunder relating to adulteration and misbranding." Accordingly, Raw Farm's raw milk cheddar cheese can simultaneously be in compliance with the 60-day aging standard of identity regulation, 21 C.F.R. 133.113(a), and adulterated under 21 U.S.C. § 342(a)(4). Hence, FDA's conclusion to that effect is not arbitrary and capricious and FDA's Letter Order was properly issued pursuant to the Decree.

**C.    FDA's Letter Order Is Properly Limited to Interstate Distribution of Adulterated Raw Milk Cheddar Cheese**

     Raw Farm presents no facts to support its argument that FDA is attempting to regulate the *intrastate* sale of raw milk. *See* Opp. at 17–18. The Letter Order is narrowly tailored to apply only to the *interstate* distribution of certain raw milk cheddar *cheese*. Specifically, the Letter Order requires Raw Farm to, among other things, "recall all Affected Cheese distributed in *interstate commerce* and destroy all Affected Cheese received by Raw Farm as a result of the recall," "destroy all Affected Cheese currently in [Raw Farm's] possession that is intended for distribution in *interstate commerce*," and "cease distributing in *interstate commerce* on a permanent basis any raw milk cheddar cheese product (including any flavors) that is manufactured using Affected Raw Milk." Mem. at 15–16 (emphases added) (citing Bracy Decl. ¶ 35 and Ex. EE). Nothing in the Letter Order prohibits Raw Farm from distributing any milk or cheese (even Affected Milk or Affected Cheese) within California. *See* Mem. at 15–16 (citing Bracy Decl. ¶ 35 and Ex. EE).

     The Letter Order is also consistent with FDA's authority because it does not order Raw Farm to use pasteurized milk or prohibit it from distributing any cheese in interstate commerce made from raw milk after it has aged for 60 days. Rather, it orders Raw Farm to discontinue the

1  limited practice of sourcing for its raw milk cheese, either directly or due to commingling, raw milk

2  that has tested positive[4] for any one of three dangerous human pathogens, *see* Mem. at 9–12,

3  because that practice renders Raw Farm's raw milk cheese adulterated under 21 U.S.C. § 342(a)(4).

4  **D.  FDA is Not Unfairly Targeting Raw Farm**

5    Raw Farm's argument that FDA is singling out Raw Farm because "no other cheese-makers

6  are required to perform pre-manufacturing testing on its raw milk and raw milk products," Opp. at

7  78, is false. FDA's Letter Order is appropriate and scientifically supportable because Raw Farm is

8  not like other raw milk cheese manufacturers. In the span of less than six months, two multistate

9  outbreaks of foodborne illnesses have been linked to Raw Farm's raw milk and raw milk cheddar

10  cheese,[5] and over 162 people have become ill. Mem. at 2–3 (citing Bracy Decl. ¶¶ 24, 25, 29, 31

11  and Exs. U, V, Z, BB; Decl. of Arthur W. Pightling, ECF No. 69-1 ("Pightling Decl.") ¶ 6 and Ex.

12  B). After FDA became aware of the first outbreak (in which 151 people became ill and the

13  California Department of Food and Agriculture ordered Raw Farm to destroy 10,624 pounds of

14  cheese), FDA initiated two inspections of Raw Farm. Mem. at 3–4 (citing Bracy Decl. ¶¶ 6, 28, 29

15  and Exs. Y, Z). These inspections revealed that it is Raw Farm's standard practice to test its raw

16  milk and manufacture raw milk cheddar cheese with milk that is known or suspected to contain

17  three dangerous pathogens, *Salmonella* Typhimurium, *E. coli* O157:H7, and *Listeria*

18  *monocytogenes*. Mem. at 4 (citing Bracy Decl. ¶¶ 9, 12, 14 and Exs. C, G, I).

19    It was only after carefully considering the results of these inspections, relevant scientific

20  studies, epidemiological evidence, and microbiological test results that FDA concluded that Raw

21  Farm's manufacturing process for raw milk cheddar cheese is not effective at eliminating these

22  pathogens, even when the cheese is aged for 60 days. Mem. at 5 (citing Decl. of Stephen P. Walker,

23  ECF No. 71-2 ("Walker Decl."), ¶ 6 and Ex. B). FDA concluded that Raw Farm's manufacturing

24

25  ---

[4] "Positive" is used herein as shorthand to describe milk or cheese that tested "presumptive" (if no confirmatory testing is done) or "presumptive" and "positive" (if confirmatory testing is done).

26  [5] Contrary to Raw Farm's assertion that there is no evidence linking the recent *E. coli* O157:H7 outbreak to Raw Farm, Opp. at 6, the Centers for Disease Control and Prevention concluded that

27  "genomic and epidemiological evidence strongly indicate that Raw Cheddar Cheese products made by RAW FARM, LLC. are the source of th[e] multistate [*E. coli* O157:H7] outbreak." Mem. at 11

28  (citing Bracy Decl. ¶ 31 and Ex. BB).

process constitutes insanitary conditions whereby the food may be contaminated with filth and/or rendered injurious to heath. *See* Mem. at 16–17 (citing Decl. of Karl C. Klontz, ECF No. 69-2 ("Klontz Decl.") ¶ 7 and Ex. B (explaining how Raw Farm's cheese, if consumed, may lead to future outbreaks of foodborne illnesses); Walker Decl. ¶ 6 and Ex. B (describing symptoms of consuming food containing *Salmonella*, *E. coli* O157:H7, and/or *Listeria monocytogenes*, which include, among other things, fever, muscle aches, vomiting, diarrhea, convulsions, kidney failure, and death)).[6]

FDA also concluded that Raw Farm's testing of finished batches of raw milk cheddar cheese is not effective at eliminating the risk to consumers for at least two reasons. First, the testing methodologies utilized by Raw Farm's third-party contractor to test cheese are unreliable and have not been validated for use in cheddar cheese. Walker Decl. ¶ 6 and Ex. C. Second, "[t]here is a high risk of false-negative results when testing a small sample as a representative of a larger lot." Mem. at 6 (citing Bracy Decl. ¶ 34 and DD). According to Raw Farm's cheese testing records, Raw Farm tests a ▆ gram sample of cheese ▆▆▆▆▆▆▆▆▆, and Raw Farm's cheese batches range in size from approximately ▆ to ▆ pounds. Walker Decl. ¶ 6 and Ex. C. Using statistical modelling, FDA estimated that the probability that that one single cell of a pathogen will be in a randomly selected ▆ gram sample is approximately 1%, which means that there is a 99% probability of a false negative result. Raw Farm would therefore need to test at least ▆ samples ▆▆▆▆▆ ▆▆▆ to achieve a 90% probability that at least one of the samples included one cell of the pathogen. Walker Decl. ¶ 6 and Ex. C.

---

[6] While Raw Farm references a social media post from an FDA employee regarding his personal opinion of raw milk and raw milk products on his personal account, Opp. at 5, that employee was not involved in FDA's decision to issue the Letter Order, *see* https://www.fda.gov/food/outbreaks-foodborne-illness/meet-stic-harris-dvm-mph-director-coordinated-outbreak-response-and-evaluation-core-network (identifying employee as Director of the Coordinated Outbreak Response and Evaluation Network, tasked with preventing, detecting, and investigating outbreaks); FDA Regulatory Procedure Manual, Part 6-2-15, at 44–45 (tasking the Program Division Director ("PDD") with monitoring and advising regarding "any problems regarding non-compliance with [a] decree" and tasking the PDD's "compliance office" with preparing a recommendation "for any action taken as the result of a violation of a decree"); https://www.fda.gov/about-fda/contact-ora/ora-field-leadership-contacts (identifying Darla Bracy as the PDD for the Office of Human and Animal Foods Operations covering California); Bracy Decl. ¶ 35 and Ex. EE (Letter Order signed by Bracy).

1    Based on these conclusions, FDA determined that, in order to fully address Raw Farm's

2  adulterated raw cheese, it needed to order Raw Farm to: (i) cease distributing in interstate

3  commerce raw milk cheddar cheese from milk that is known or suspected to contain the three

4  dangerous pathogens, (ii) destroy any raw milk cheddar cheese in its possession sourced from such

5  pathogenic milk intended for the interstate market, and (iii) recall all such raw milk cheddar cheese

6  already distributed in interstate commerce. Exercising the enforcement provisions of the Decree, as

7  opposed to initiating another new enforcement action, addresses Raw Farm's failure to comply with

8  the FDCA, protects the public health, and conserves both judicial and agency resources. *Cf. Heckler*

9  *v. Chaney*, 470 U.S. 821, 831 (1985) (noting that it is "peculiarly within [the agency's] expertise" to

10  "assess whether a violation has occurred," "whether agency resources are best spent on this

11  violation or another," and "whether the particular enforcement action . . . best fits the agency's

12  overall policies"). Moreover, the government's exercise of these enforcement provisions in the

13  Decree have afforded Raw Farm notice and an opportunity to be heard and to present evidence in

14  front of a neutral decision maker.

15    In its effort to protect the public health, FDA has acted with restraint, attempting both before

16  and after the Letter Order to obtain Raw Farm's voluntary compliance. Mem. at 6–8. Accordingly,

17  FDA is not unfairly targeting Raw Farm. Rather, when confronted with a threat to the public health

18  (the *Salmonella* Typhimurium outbreak), FDA followed the evidence; came to a reasoned

19  conclusion backed by relevant scientific studies, epidemiological evidence, microbiological test

20  results, and FDA expert opinions; and issued a narrowly-tailored, science-based Letter Order aimed

21  at preventing violative product from reaching and remaining in the interstate market.

**CONCLUSION**

23    For these reasons, the United States respectfully requests that this Court issue the proposed

24  order attached to the United States' motion, ECF No. 69-3.

Date: May 20, 2024                                  Respectfully submitted,

BRIAN B. BOYNTON                                    PHILLIP A. TALBERT
Principal Deputy Assistant Attorney General         United States Attorney
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General                     /s/ Emilia P.E. Morris
                                                    EMILIA P. E. MORRIS
AMANDA N. LISKAMM                                   Assistant United States Attorney
Director                                            U.S. Attorney's Office
Consumer Protection Branch                          Eastern District of California
                                                    Counsel for the United States of America


  /s/ Roger Gural

Roger Gural
Senior Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
450 Fifth Street, N.W., Suite 6400S
Washington, D.C. 20001
Tel: 202-307-0174
Email: roger.gural@usdoj.gov
Counsel for the United States of America


OF COUNSEL:

MARK RAZA
Chief Counsel
U.S. Food and Drug Administration

SHANNON SINGLETON
Deputy Chief Counsel, Litigation
U.S. Food and Drug Administration

ELIZABETH TETER-GOSSMANN
Associate Chief Counsel for Enforcement
U.S. Department of Health and Human Services
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993

REPLY IN SUPPORT OF UNITED STATES OF AMERICA'S MOTION TO ENFORCE THE CONSENT DECREE

## CERTIFICATE OF SERVICE BY U.S. MAIL

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Eastern District of California and is a person of such age and discretion to be competent to serve papers:

That on May 20, 2024, she served a copy of:

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES OF AMERICA'S MOTION TO ENFORCE THE CONSENT DECREE**

by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and its contents in the United States Mail at Fresno, California.

**Addressee(s):**

Mark R. Figueiredo
Structure Law Group, LLP
1754 Technology Drive, Suite 135
San Jose, CA 95110
(408) 441-7500

*/s/ Marcela Vasquez*
Marcela Vasquez